ALBANY,
Feb. 1826.

Reynolds
v.
Shuler.

REYNOLDS *against* SHULER.

TROVER, for certain copper stills, or kettles, steam tubs, coolers, and a worm, tried at the Montgomery circuit, July 23d, 1823, before WALWORTH, C. Judge.

ON the trial, these facts were proved: One Gilman, a distiller, had mortgaged the articles in question to the plaintiff to secure a sum of money; and default having been made in the payment, the plaintiff caused them to be removed into his possession. The articles were placed by Gilman and Taylor, in a stone distillery, which they held under a lease for years, and then in possession of Gilman, for the purpose of carring on the distilling business. When the plaintiff's agent took the articles, they were found affixed to the building; the kettles or boilers being masoned up in brick arches and the steam tubs and coolers, with the worm, were all connected with the boilers by logs and braces affixed to the building. He broke up the arches and took out the kettles and other articles, and removed them to the plaintiff's coal house.

On the 15th of May, 1822, within thirty days after the removal by the plaintiff, Shuler distrained the articles so removed, as bailiff of Duncan Stewart and Charles Tullock, landlords of Gilman and Taylor, for $68 74, a balance of their conversion.

*If one undertake to exercise dominion over personal property, in exclusion of defiance of the owner's right, it is a conversion.*

*Thus, where S. a bailiff distrained goods in K's coal house, as the goods of G. and sold them but did not remove them; held, that this was a conversion.*

*But the restoration to or re-possession of goods by the plaintiff before suit brought, will go in mitigation of damages.*

*A mortgagee in possession of chattels, may maintain trover for*

As between landlord and tenant, the latter may, during the term, remove copper stills, kettles, steam tubs, &c. erected by him for the purpose of carrying on the business of the distillery, though fixed to the building.

And he may sell or mortgage such articles. But if mortgaged, and the mortgagee take possession, and remove them, the rent being unpaid, the landlord may follow and distrain them within thirty days thereafter.

And if separated by the tenant, or his agent, they are liable to distress. A mortgage of goods, is not a sale of them *bona fide*, (so as to prevent their being followed as a distress) within the proviso of the 13th section of the statute. (1 R. L. 437.)

To warrant distraining goods removed off the demised premises it is not necessary that the rent should have fallen due within thirty days next before their removal; but they may be distrained at any time within thirty days after their removal, if the rent be then due, or become due within thirty days after the removal; or within thirty days after the rent shall have become due, if the rent did not fall due till after thirty days from their removal.

rent which fell due on the 1st of November preceding. The lease under which this distress took place, was dated August 24th, 1820; and was for the term of four years; and included the still.

The plaintiff admitted that he removed the articles, knowing the rent to be due.

The defendant sold them at auction, the rent not being paid, at the plaintiff's coal house; but they had not been actually removed by the purchaser, when this suit was commenced. The plaintiff forbid the sale, claiming that they were fixtures, and not liable to distress.

A motion was made for a nonsuit, on the ground that no conversation was proved; but it was overruled; and the jury by consent, found a verdict for the plaintiff, for $193 50, subject to the opinion of this court on a case; and with liberty to either party to turn it into a special verdict, or bill of exceptions.

*M. T. Reynolds*, for the plaintiff. 1. The property could not have been distrained before removal. Things annexed to the freehold cannot be distrained; as furnaces, cauldrons, &c. (Bradby on distresses, 214.) So of things which cannot be restored in the same plight as when taken. (id. 212, Co. Litt. 47.) The anvil in a smith's shop is privileged, because it is affixed to the freehold. (4 T. R. 566, per Ld. Kenyon.) And so of things generally, which are thus affixed. (id. per Buller, J.) Trespass lies for taking fixtures as a distress for rent. (4 B. & A. 206.)

2. The severance by the plaintiff, and immediate removal, could not give the landlord any greater right to distrain than he had before.

3. Besides; here was a *bona fide* sale and removal before distress. The statute, authorising a distress after removal, expressly excepts such a case. (1 R. L. 437, s. 13.) It does not apply to the goods of any one beside the tenant. (Bradby on distresses, 137, 138.)

The plaintiff, for the purpose of this suit, is to be considered the absolute owner. (Powell on Mortg 51. 1 Atk. 477, 167. 1 Ves. Jun. 348, 378. 5 John. 260. 2 Caines Cas. Err. 200.)

4. The conversion was sufficiently proved. (7 John. 254. 6 Bac. Abr. 677. 1 John. 65. 10 id. 172. 1 Chit. Plead. 155. 6 East, 540. 6 Mod. 212. 6 T. R. 298.)

5. The landlord could not distrain, after thirty days from the time when the rent became due. (Laws, sess. 41, ch. 228, s. 7. *Burr* v. *Van Buskirk,* 3 Cowen, 263.)

*D. Cady,* contra. There was no sufficient evidence of a conversion. (12 Mod. 344. 6 East, 538. 4 T. R. 263, 4.) The plaintiff has never been disturbed in his possession. At any rate, the damages should not have been more than nominal. The goods should have been considered as returned, and the damages reduced accordingly, though there might have been a technical conversion. (5 Mass. Rep. 105, 6. 14 John. 278. 6 Mod. 212.)

Whatever the tenant may remove from the premises may be taken for rent. (Woodf. ch. 13, s. 1, p. 389.) And no doubt, these articles might have been so removed. (id. p. 281. 1 Atk. 477. 1 Salk. 368.) But if they were not such as the tenant could remove, then the plaintiff has no title, and cannot recover. (9 John. 362.)

*Burr* v. *Van Buskirk* did not call for the decision whether a landlord may distrain after thirty days from the time of the rent falling due. It turned on other points. The statutes there considered are not inconsistent; but may well stand together.

*Curia,* per SUTHERLAND, J. The first question which arises, is, whether there was sufficient evidence of a conversion of the goods in question, by the defendant.

It is not necessary to a conversion, that there should be a manual taking of the thing in question by the defendant. It is not necessary to show that he has applied it to his own use. If he undertakes to exercise a dominion over it, in exclusion or in defiance of the plaintiff's right, that is, in law, a conversion, whether it be for his own or another person's use. Hence, a re-delivery of the thing will not protect him from the action. (6 Bac. Abr. 677.)

In *Shipwick* v. *Blanchard*, (6 T. R. 298,) the defendant entered upon the premises of the plaintiff; and gave him written notice that he seized and distrained his goods for rent. The plaintiff paid the rent; and then brought an action of trover, for taking the goods, the defendant having no right to distrain. It was contended by Chambre & Holroyd, for the defendant, that trover would not lie, because there was no taking in fact, but only a notice to the plaintiff, that the things were taken without any removal of them, or actual laying hands on any part of them. But it was answered by Law, that if a party claim and assert a dominion over goods, especially turning the possession of them to his own profit, that is a clear possession in law, to subject the wrong doer to an action of trover; and the action was sustained.

In *M'Combie* v. *Davies*, (6 East, 540,) Lord Ellenborough reiterates, with approbation, the opinion of Lord Holt, in *Baldwin* v. *Cole*, (6 Mod. 212,) that the very assuming to one's self the property and right of disposing of another man's goods, is a conversion.

In *Bristol* v. *Burt*, (7 John. 254,) in which most of the cases are considered, the same doctrine is recognized and established. Also in *Murray* v. *Burling*, (10 John. 175.)

The undertaking to sell, under color of legal process, another man's goods, is an assumption of a right to dispose of them, of the highest and most unequivocal character. It must, almost of necessity, bring a charge upon the party, to a greater or less extent; and that, in the opinion of Buller, J. in *Syeds* v. *Hay*, (4 T. R. 260,) is sufficient.

If the property in question, therefore, was the plaintiff's, and was not liable to be distrained, no matter what became of it subsequent to the sale. Trover may be maintained, to recover his damages. In estimating those damages, it may be proper to inquire, what became of the property after the sale? If the plaintiff re-possessed himself of it before suit brought, it would not deprive him of his action, though it would diminish his damages. For it is well settled, that trover lies for damages for the conversion of a chattel, notwithstanding it is restored before suit brought. The ac-

tion is not to recover the thing, but damages for the conversion. The restoration or recovery of the property goes only in mitigation of damages. (6 Bac. Abr. 678, 80. 12 Mod. 212. Bull. N. P. 46. *Murray* v. *Ogden*, 10 John. 176, per Thompson, J.) The plaintiff is to be presumed to have acquired the possession of the property in question, with the knowledge and assent of Gilman, who had mortgaged it to him. Indeed, this is fairly to be inferred from the evidence. He was then a mortgagee in possession ; and as such, had a sufficient property in the goods, to enable him to maintain trover for their conversion. (5 John. 258. Powell on Mortg. 55, 6.)

The next question is, whether the property was liable to be distrained for rent, before its removal by the plaintiff. The old rule, that whatever was attached to the freehold, became part of it and could not be taken away, has been very much relaxed by modern determinations, as between landlord and tenant. Thus, it was held by Lord Hardwicke, in *Ex parte Quincy*, (1 Atk. 477,) that a tenant, during the term, may take away chimney pieces, and even wainscot, if put up by himself. And if a man lets a house where there is a copper, or a *brew-house, where there are utensils*, unless there was some consideration given for them, and a valuation set upon them, they would not pass. And he adds, several sorts of things are often fixed to the freehold, and yet may be taken away ; as beds fastened to the ceiling with ropes, or nailed ; yet no doubt they may be removed. (*Heermance* v. *Vernoy*, 6 John. 5.) In Poole's case, (1 Salk. 368,) it was held by Lord Holt, that a soap boiler, during the term, might remove the fats, coppers, &c. which he had set up for the convenience of his trade ; and that he might do it at common law, in favor of trade, and to encourage industry. In *Lawton* v. *Lawton*, (3 Atk. 12,) it was held that a fire engine set up for the benefit of a colliery, by a tenant for life, was to be considered a part of his personal estate, and to go to the executor. And Lord Hardwicke observes, that what would have been held to be waste in Henry the 7th's time, as removing wainscot fixed only with screws, and marble chimney pieces, is now allow-

ed to be done; and he adds, coppers and all sorts of brew·ing vessels cannot possibly be used without being as much fixed as fire engines.   And in brew houses especially, pipes must be laid through the walls, and supported by walls; and yet, as they are laid for the convenience of trade, landlords will not be allowed to retain them.   (Vid. note (1) to that case, page 16.   *Dudley* v.   *Warde*, Ambl. 113.  Bull. N. P. 34.   2 East, 90.   *Elwes* v. *Maw*, 3 East, 50, per Lord Ellenborough, in which this subject is very ably discussed, and all the cases considered.   4 Esp. Rep. 33.   Woodfall, 280, 1.   17 John. 116.)   These cases very conclusively establish, that the tenant in the case now under consideration, had a right at any time during his term to remove the articles in question from the demised premises.

The question then arises, whether the proposition, (which as a general rule is undoubtedly true,) that things fixed to the freehold cannot be distrained, (Co. Litt. 47, b. Woodf. 389,) applies to a case like this.

The reason of the rule is, that they savor of the realty; and the right of distress is confined to personal chattels. (3 Bl. Com. 6, 10.   Woodf. 384.)   The anvil of the smith, and mill stones are privileged, because they are attached to the realty.   (4 T. R. 567, per Ld. Kenyon.)   And the privilege continues, although they may be temporarily removed from their places for the purpose of repairs; because such removal is a matter of necessity; and they still continue, in judgment of law, the one a part of the forge, and the other of the mill.   (Woodf. 389.)

So, it is said, cauldrons and furnaces, or the doors and windows of a house, cannot, for the same reason, be distrained.

But suppose the anvil, the mill stone, the cauldron or furnace, or the doors and windows of a house, broken up and separated from the freehold, not temporarily, for the purpose of repair, but permanently for the purpose of being sold, and still remaining on the demised premises, would they not be liable to be distrained?   They would have ceased to be a part of the freehold, or to savour of the realty.   They

would be simply personal chattels ; and, as such, unquestionably liable to distress.

If the reason of their original exemption be supposed to be, that they could not be severed from the freehold without detriment, and, therefore, could not be restored to the owner in the same condition in which they were taken, (a distress at common law being merely in the nature of a pledge or security, and not of execution or satisfaction ; 3 Bl. Com. 9 ; Co. Litt. 47. b.; Woodf. 389 ;) still, that reason ceases when they are actually severed, not by the landlord, but by the tenant or his agent. So at common law, sheaves or shocks of corn on the ground, &c. could not be distrained ; but if loaded on a cart, they might, for they then cease to savour of the realty, and may be safely restored. (3 Bl. Com, 9. Co. Litt. 47. b. 4 Barn. & Ald. 207, per Abbot, Ch. J. 3 Com. Dig. 557, Distress, (C.) 4 Term, 565.)

There was a period, then, after the articles in question were separated from the realty, when they were upon the demised premises, and subject to be distrained for rent as the property of the tenant. They were removed by the plaintiff and followed by the landlord, within the time prescribed by the statute.

The mortgage was not a sale of the chattels, within the proviso of the 13th section of the act concerning distresses. (1 R. L. 437.)

But the rent distrained for in this case, fell due more than thirty days before the distress was made. The warrant is dated the 15th of May, 1820 ; and directs the bailiff to distrain for $68 74, for rent due on the 1st November (then) last.

It is contended, on the authority of *Burr* v. *Van Buskirk*, (3 Cowen, 270,) that the landlord's right to pursue and distrain property removed from the premises, is limited to 30 days after the rent falls due.

Such undoubtedly was the opinion expressed by Mr. Justice Woodworth, in that case. He considered the 7th section of the act of April 13th, 1820, as altering the law in that respect. The determination of that point was not necessary to the decision of the cause. It was a point raised

and discussed; but the judgment of the court would have been the same, whatever might have been its opinion upon that particular question.   I then doubted the correctness of the construction given by Mr. Justice Woodworth, to the 7th section of the act 1820, (sess. 43, ch. 194;) and I believe it was then distinctly understood, that the question was to be considered open for future consideration.

By the 13th section of the act of 1813, (1 R. L. 437,) the landlord had a right, (if the tenant removed his goods and chattels from the demised premises leaving the rent unpaid,) to take and seize them, wherever they could be found, at any time within 30 days after their removal, as a distress for the arrears of rent; provided such seizure was made after such rent had become due and payable.   If the tenant, therefore, removed his goods more than 30 days before the rent fell due they could not be followed for the purpose of distress. The 7th section of the act of 1820, (sess. 43, ch. 194, p. 178,) authorizes the landlord, at any time within 30 days next after his rent shall have become due, to pursue and seize all such goods and chattels of the tenant as may have been conveyed away, &c. without any restriction as to the time of their removal; and repeals so much of the 13th section of the act of 1813, as is repugnant to the 7th section of the act of 1820.   These sections are to be construed together, and effect is to be given to both, so far as they are capable of standing together.   The latter was not intended as a substitute for the former; but as an amendment of it. It provides for a case omitted in the former act.   It does not take from the landlord the right to pursue the property of the tenant, in any case where he before possessed it; but it gives him authority to follow and seize it, in a case in which, by the old act, he could not.

Taken together, their construction appears to me to be this: the landlord shall, in no case, pursue and seize the goods, &c. until his rent is due.   If rent was due at the time of their removal, or becomes due within thirty days thereafter he must pursue and seize them within 30 days after their removal.   But if no rent is due when the goods are removed nor becomes due within 30 days thereafter, then he may

pursue and seize them at any time within 30 days after his rent does become due.

Savage, Ch. J. said he concurred in the opinion of Sutherland, J. The declaration in the 6th section of the act of 1820, "that nothing in this act contained shall be construed to impair the rights of any landlord or lessor, under existing laws," seems expressly to countenance the construction given by him to the 7th section. And though this 7th section, and the 13th section of the act of 1813, may admit either of the construction given in *Burr* v. *Van Buskirk*, or the one now given, that which allows both to stand should be preferred, especially when the legislature declare that they do not mean to lessen or impair the landlord's remedy. The construction given in *Burr* v. *Van Buskirk*, certainly does impair the landlord's remedy very essentially.

Judgment for the defendant.