JOEL D. GILLET, Respondent, *v.* GILES ROBERTS, Appellant.

A *bona fide* purchaser of personal property, wrongfully taken from the possession of the owner, is not liable for conversion until after demand and refusal.

Where words are relied upon to constitute a conversion, they must be uttered in proximity to the property, under such circumstances, as to show a determination to exercise dominion and control over it, and a defiance of the owner's rights.

A quantity of lumber, wrongfully cut from plaintiff's lands and lying in rafts in the C. river, was purchased by defendant in good faith and without notice of any defect in the title of the vendor. Upon the same day, plaintiff's agent informed defendant of plaintiff's claim, demanded the lumber and requested defendant to take the rafts and land them at C., where plaintiff would pay the expenses. Defendant assented to this. One of the rafts got fast in the river before reaching C., the others defendant landed at, C. and left them moored to the river bank; and at no time thereafter, in any way, interfered with any of the lumber. After the arrival of the lumber he saw plaintiff at C., who asked him to deliver the lumber to him. Defendant replied he would do nothing about it; that he would leave the lumber where it was, and would not then take the expenses. Some weeks thereafter plaintiff called upon defendant at his house, thirty miles from C., and demanded the lumber. Defendant replied that he did not want any trouble, was willing to do what was right, and that he would not give it up unless he could get relieved from paying therefor. In an action for conversion of the lumber, *held,* defendant was not liable.

*Dunning* v. *Austin* (34 Vt., 330) disapproved, and *Wooster* v. *Sherwood* (25 N. Y., 278) limited and distinguished.

(Argued September 25, 1873; decided January term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The action was for the conversion of a quantity of lumber. The facts sufficiently appear in the opinion.

*John W. Dininny* for the appellant. Defendant being in possession of the lumber, under a fair purchase, was *prima facie* the owner thereof. (*Fish* v. *Skutt*, 21 Barb., 333.) To defeat this presumption plaintiff was bound to establish own-

ership in himself by proving title to the land on which the lumber grew. (*Marvin* v. *Cooper*, 26 Barb., 468; *Hubbell* v. *Rochester*, 8 Cow., 115.) The fact that plaintiff paid taxes, cut timber and contracted for the sale with Skinner, is not sufficient to show him in actual possession. (*Jackson* v. *Myers*, 3 J. R., 388; *Frost* v. *Duncan*, 19 Barb., 560.) Plaintiff having advised the sale to Dennis could not, by rescinding his contract with Skinner, put an end to Dennis' right to the lot and timber. (*Storrs* v. *Baker*, 6 J. Ch., 166; *Moran* v. *Hays*, 1 id., 344; *Tilton* v. *Nelson*, 27 Barb., 595.) There was no conversion of the lumber by defendant. (*Monnot* v. *Ibest*, 33 Barb., 24–26; *Holbrook* v. *Wright*, 24 Wend., 169; 2 Greenl. Ev., § 644; *Hill* v. *Covell*, 1 Comst., 522; *Bowman* v. *Eaton*, 24 Barb., 528; *Hawkins* v. *Hoffman*, 6 Hill, 588; *Packard* v. *Gotman*, 4 Wend., 613; 48 N. Y., 492.) Defendant was released from liability by plaintiff's going on the rafts at Corning, exercising act of ownership over them, offering them for sale and negotiating a sale. (*Vosburg* v. *Welch*, 11 J. R., 175; *Murray* v. *Burling*, 10 id., 176; *Reynolds* v. *Shuler*, 5 Cow., 326.) The authority to the agent to convey should have been proved. (*Hanford* v. *McNair*, 9 Wend., 54.) The deed was not admissible to prove title until it was made to appear that the grantor had title. (*Hoak* v. *Long*, 10 Sergt., 9.) The execution of the deed is not authenticated according to statute. (2 R. S. [4th ed.], 163, §§ 5, 6.) The referee's report is not sustained by the evidence. (*Putnam* v. *Hubbell*, 3 Hand, 106; *Butler* v. *Truslow*, 55 Barb., 293.)

*Geo. T. Spencer* for the respondent. By claiming title derived from plaintiff defendant admitted that title to be good. (*McBurney* v. *Cutler*, 18 Barb., 203, 207.) Defendant cannot, therefore, dispute plaintiff's title. (*Castle* v. *Noyes*, 14 N. Y., 239; 1 Greenl. Ev., 189, 190; *Hunt* v. *Johnson*, 19 N. Y., 279, 298; *Machin* v. *Gartner*, 14 Com., 239.) In cutting the timber Dennis became a trespasser; and wherever found, or in whatever form, it belonged to

plaintiff. (*Godwin* v. *Nelin*, 35 How. Pr., 402 ; *Van Duesen* v. *Young*, 29 Barb., 9, 17 ; *Doolittle* v. *Eddy*, 7 id., 74 ; *Stone* v. *Sprague*, 20 id., 509 ; *Erwin* v. *Olmsted*, 7 Cow., 229 ; *Suffern* v. *Townsend*, 9 J. R., 35 ; *Cooper* v. *Stover*, id., 331 ; *Morris* v. *Wait*, 3 Wend., 104 ; *Pierpont* v. *Barnard*, 5 Bur., 304.) Plaintiff was entitled to recover the highest price from time of the conversion to trial. (*Wilson* v. *Mathews*, 24 Barb., 295 ; *Mathews* v. *Coe*, 56 id., 430, 441, 442 ; *Romain* v. *Van Allen*, 26 N. Y., 309 ; *Burt* v. *Dutcher*, 34 id., 495 ; *Scott* v. *Rogers*, 31 id., 676.) Plaintiff was entitled to recover the value of the lumber in the condition it was when demanded, or when in defendant's possession. (Sedg. on Dam., 484.) The purchase by defendant as well as by Swimely, and taking possession and control of the property, was a conversion. (*Dunning* v. *Austin*, 34 Vt., 330 ; *Wooster* v. *Sherwood*, 25 N. Y., 278, 287, 288.) The deed to plaintiff was properly received in evidence. (*Corbin* v. *Jackson*, 14 Wend., 619 ; *Jackson* v. *Livingstone*, 7 id., 136.)

EARL, C. I will assume without discussing or deciding it, that upon the facts as disclosed in the evidence, the title to the lumber was in the plaintiff, and that at the time he first demanded it of the defendant he was entitled to it. But I think he failed to show a wrongful conversion of it by the defendant. One Dennis cut and removed this lumber from the land claimed by the plaintiff, and commenced rafting it upon the Cowanesque river. While he was doing so, it was seized and sold by the sheriff of Tioga county, Penn., by virtue of an execution against him. At such sale one Swimely bid it off and took possession thereof. So far as appears, he was a *bona fide* purchaser. While he had possession of the rafts in the river, the defendant purchased the same of him in good faith without notice of any defect in his title. Thus far the defendant did not become liable for a conversion. It is well settled that a *bona fide* purchaser of personal property at a sheriff's sale or even from a wrong-doer is not liable for a conversion without a demand and refusal. (*Ely* v. *Ehle*,

3 Comst., 506 : *Barrett* v. *Warren*, 3 Hill, 348 ; *Twinam* v. *Swart*, 4 Lans., 263.) The plaintiff, to maintain his action, was bound, therefore, to show that the defendant was guilty of a conversion of the lumber after he purchased the same. I will briefly call attention to all the material facts bearing upon such alleged conversion. After the purchase the defendant continued to raft the lumber down the river, and on the same day, while he was thus engaged, plaintiff's agent called upon him and informed him of plaintiff's claim and demanded the lumber, and requested him to take the rafts and land them at Corning, promising him that plaintiff would be there and pay the expense. Defendant assented to this and said he would land the lumber as requested as he did not want any trouble about it. Thus the defendant was employed by the plaintiff to raft the lumber to Corning, and he landed two of the rafts at Corning and the other, before it reached there, struck and got fast in the river. The two rafts were left hitched to the dock in the river at Corning; and it does not appear that the defendant at any time thereafter, before the commencement of this suit, in any way interfered with the lumber or exercised any actual dominion whatever over it. With the exception of the one raft which did not reach its destination, the lumber was just where he had employed and directed the defendant to place it. He was in no way hindered from taking possession of it, and he testified that he was actually upon the rafts at Corning and supposed he could have taken possession of the lumber. How then did the defendant convert this lumber ? It is claimed that he did it by something which he said, and I will call attention to what he said about it. After the rafts were moored in the river at Corning, the plaintiff called upon the defendant at some place in Corning and asked him to deliver the lumber to him, saying that he would pay his expenses. Defendant replied that he would do nothing about it, that he would leave the lumber where it was, but would not then take the expenses, that he must go and see Swimely. This was all that was said, and unless this constituted a conversion the case fails to show any. The

defendant had delivered the lumber where he had agreed to. After that he exercised no control over it and did not in any way interfere with it. Why did the plaintiff not take possession? There was nothing to prevent his doing so. The defendant did not even by language prohibit his doing so. What right had he to ask the defendant to make any other delivery, and why did he ask him to do so? What other delivery could the defendant make? He was certainly not obliged to go with the plaintiff upon the rafts and there make a formal surrender and delivery. He was not even obliged to say to the plaintiff upon his demand, that he made no further claim to the lumber and that he abandoned all right and claim which he may have supposed he had to the same. He was not obliged to take his expenses or do anything about it and without some active interference on his part, his mere passivity and quiescence could not make him liable for a conversion.

So far, then, there was no conversion of the lumber. After this, on the fourth day of October, the plaintiff again called upon the defendant at his home, *thirty miles* from Corning, and there again demanded the lumber in the three rafts. The defendant replied that he did not want any trouble about the lumber; that he was willing to do what was right, that he would not give it up unless he could get released from paying the men he bought of. Instead of going thirty miles to demand the lumber of the defendant, why did he not take possession of it? What was there to prevent him? What did he expect the defendant to do, particularly at such a distance from the lumber? If the defendant had then asserted distinctly that he owned the lumber, it would not have amounted to a conversion. Suppose one should meet me at a distance of thirty miles from my office, and declare that he owned my law library and that he would not give it up, he not having it in any way under his control or in his possession; could it be said that he had converted the same? No cases have yet gone so far as to hold that mere words, under such circumstances, could constitute a conversion. It is true

that, to constitute a conversion, a manual taking is not necessary; but where words are relied upon they must be uttered under such circumstances, in proximity to the property, as to show a defiance of the owner's right, a determination to exercise dominion and control over the property and to exclude the owner from the exercise of his rights. (*Bristol* v. *Burt*, 7 Johns., 255; *Murray* v. *Burling*, 10 id., 172; *Reynolds* v. *Shuler*, 5 Cow., 323; *Connah* v. *Hale*, 23 Wend., 462.)

The views above expressed are also applicable to the demand made in November, after two of the rafts had been carried away by a flood. On the fourth of October one raft had been carried away. As to all the lumber carried away by the flood prior to a demand, the impossibility to make a delivery, provided there had been no prior conversion, was a sufficient excuse for not delivering. (*Hill* v. *Covell*, 1 Comst., 522; *Whitney* v. *Slauson*, 30 Barb., 276.)

I do not think that this action was commenced, or decided by the referee, upon the theory that there was any conversion growing out of the alleged demand and refusal, but upon the theory that the defendant became liable by the simple purchase of the lumber, followed by taking possession, from Swimely, who had no title against the plaintiff. The complaint does not allege, and the referee does not find, any demand and refusal. And, in opposition to the cases cited above, the counsel for the respondent claimed, on the argument, that no demand and refusal was necessary to show a conversion and that the defendant was liable on account of his purchase from one who had no title, without a demand and refusal, citing to sustain his claim the cases of *Dunning* v. *Austin* (34 Vt., 330), and *Wooster* v. *Sherwood* (25 N. Y., 278). In the former case POLAND, Ch. J., while laying down the rule as claimed by the plaintiff, does it simply because he considers it thus settled in that State, at the same time expressing his dissatisfaction with the rule and acknowledging that it is settled otherwise in Connecticut and other States, as well as England. In the latter case, Judge WRIGHT says he was inclined to the opinion that an action of trover

could be maintained against a purchaser from a wrong-doer without demand and refusal. But he cites no authority and gives no reasons for the opinion, and concludes, after expressing the opinion, that there was a sufficient demand, and upon the latter ground the case was undoubtedly decided. The rule is a reasonable and just one, that an innocent purchaser of personal property from a wrong-doer shall first be informed of the defect in his title, and have an opportunity to deliver the property to the true owner, before he shall be made liable as a *tort feasor* for a wrongful conversion.

I am, therefore, of the opinion that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.