ROBERT D. CASTLE, Appellant, *v.* CORN EXCHANGE BANK,.
Respondent.

1. BANKS — COLLECTION — CONVERSION — DEMAND.   A bank, which
came lawfully into possession of a draft in payment of a check which it
had received for collection, cannot be held liable for the conversion of the
draft or its proceeds until after demand therefor and its refusal to surren-
der the property.

2. DEMAND — BY WHOM TO BE MADE.   A demand and refusal, as a con-
dition of an action by the payee of a check for conversion of a draft
received in payment of it by one of the banks through which it had been
sent for collection, is not made out by the bank's refusal to comply with a
request to hold the draft on account of the insolvency of a prior collecting
bank, when this request was made by the drawer of the check, who does
not appear to have any authority from the payee to act in his behalf.

3. CHECKS — AGENCY OF COLLECTING BANK.   A bank, receiving for
collection a check sent by another bank which holds it only for collection,
is the agent of the latter, and not of the payee.

4. BANKS — RELATION OF COLLECTING BANK TO OWNER OF CHECK.
A bank which receives a draft in payment of a check which it had taken
for collection and credit from another bank, which held it only for
collection, is the lawful holder thereof for the purpose of crediting it
to the account of the latter, and, therefore, is not liable, in the absence of
a demand and refusal, to the payee of the check for the conversion of the
draft or its proceeds, where it never actually received the proceeds because
they were misappropriated by a sheriff who held them under attachment
in an action to collect the draft.

Reported below, 75 Hun, 49.

(Argued December 11, 1895; decided December 19, 1895.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made January 19, 1894, which affirmed a judgment in favor of
defendant entered upon a verdict directed by the court, and
also affirmed an order denying plaintiff's motion for a new
trial.                        \

This action was brought to recover damages for the conver-
sion of a draft, which came into the possession of the defendant
under the following circumstances: In July 1884, Mary C.
Melson drew a check on the Farmers' National Bank, of Lan-
caster, Pennsylvania, to the order of John J. Cameron of

Indianapolis, for $1,871.84.  The check was sent to the payee,. who indorsed the same in blank and delivered it for collection to the firm of A. & J. C. S. Harrison, bankers at Indianapolis, Indiana.  The Harrisons indorsed the check for collection and sent the same to the defendant's cashier, with a letter stating that they inclosed it for credit.  On receipt of this check the defendant sent it to the Farmers' National Bank, indorsed,. "for collection;" whereupon that bank drew the draft in question, sent it to the defendant in payment of the check and canceled the check.  On the day following Cameron, the payee named in the check, telegraphed to Mrs. Melson that Harrisons' bank had suspended and to stop the collection of the check.  Thereupon Mrs. Melson telegraphed to the defendant to hold the money on the draft of the Farmers' Bank and that Harrisons' bank had suspended.  To this telegram the defendant replied by telegraph as follows : " This bank is the owner of draft paid by Farmers' National Bank of Lancaster."  Then, at Mrs. Melson's request, the Farmers' Bank telegraphed to the defendant as follows : " Can you hold our draft on 1st N. Y. sent yesterday ?  The drawer and indorser would like to have the money held for their account."  The defendant telegraphed in reply : " Cannot.  Draft which it paid for was our property."  Thereupon the Farmers' Bank telegraphed to the First National Bank of New York, upon which its draft had been drawn, to refuse payment thereof. The request was complied with.  In a suit subsequently commenced by this defendant against the Farmers' Bank, to collect the draft, an attachment issued and was levied upon the funds of the Farmers' Bank with the First National Bank, and, eventually, the plaintiff in that action was held to be entitled to recover.  The final decision in that suit was rendered by the Second Division of this court and is reported in 118 N. Y. at page 443.  The sheriff, who had collected the moneys from the First National Bank under the attachment in the action, converted the money to his own use and absconded.  Thereafter, Cameron assigned to this plaintiff all his rights and causes of action against the defendant and the.

present suit was instituted.  The trial court directed a verdict
for the defendant.  On appeal from the judgment entered
thereupon, the same was affirmed at General Term.  The
plaintiff now appeals to this court from the judgment of
affirmance at the General Term.

*Jefferson Clark* for appellant.  Cameron never parted with
the ownership of the check to the Harrisons, and defendant
having received it with the restrictive indorsement of the
Harrisons "for collection," acquired no title to it as against
Cameron.  (*McBride* v. *F. Bank*, 26 N. Y. 450; *Dickerson*
v. *Wason*, 47 N. Y. 439; *N. P. Bank* v. *S. Bank*, 114 N.
Y. 28; *N. B. & D. Bank* v. *Hubbell*, 117 N. Y. 384; Daniel
on Neg. Inst. § 698; *F. N. Bank* v. *Strauss*, 14 Am. St.
Rep. 579; 67 N. Y. 598.)  The printed letter stating, "We
inclose for credit as stated below," and mentioning this check as
one of the inclosures, gave defendant no title to the check as
against Cameron.  (*Muller* v. *Pondir*, 55 N. Y. 325; *G. N.
Bank* v. *Bingham*, 118 N. Y. 349.)  Defendant acquired no
better or other title to the draft in suit than to the check for which
it was given.  (*Comstock* v. *Hier*, 73 N.Y. 269, 275, 277.)  The
evidence shows a wrongful conversion of the draft by defendant.
(*Boyce* v. *Brockway*, 31 N. Y. 490; *Laverty* v. *Snethen*, 68
N. Y. 522; *Pease* v. *Smith*, 61 N. Y. 477; *Bristol* v. *Burt*,
7 Johns. 255; *Connah* v. *Hale*, 23 Wend. 462; *Schroeppel* v.
*Corning*, 5 Den. 236; *Alsager* v. *Close*, 10 M. & W. 576;
*Edmunds* v. *Hill*, 133 Mass. 445; *Gilmore* v. *Newton*, 9
Allen, 171; Story on Prom. Notes, § 143; *Watt* v. *Potter*,
2 Mason, 80.)  The evidence was sufficient to warrant the
jury in finding a conversion, and this was a question of fact
to be judged of by the jury under all the circumstances.
(*Stone* v. *Flower*, 47 N. Y. 566.)  The cause of action for
conversion, which accrued to Cameron, having been assigned
by him to plaintiff, no demand or other act by plaintiff, as
such assignee, was necessary to enable him to maintain this
action.  (*McBride* v. *F. Bank*, 26 N. Y. 450; *McKee* v.
*Judd*, 12 N. Y. 622, 626.)  The measure of damages was the

face value of the draft and interest, and no further proof of damages was required. (*Potter* v. *M. Bank*, 28 N. Y. 641.) The admission of evidence that defendant had not collected the draft in full, owing to the sheriff's default, was error. (*Matter of Dawson*, 110 N. Y. 114; *Comstock* v. *Hier*, 73 N. Y. 269.)

*John M. Bowers* for respondent. Cameron was not the owner of the draft and could not maintain an action upon it. (*Hays* v. *Hathorn*, 74 N. Y. 486; 118 N. Y. 448; *W. S. Bank* v. *Town of Solon*, 136 N. Y. 465; *Cluff* v. *Day*, 141 N. Y. 580.) The defendant, having lawfully come into the possession of the draft, could, under no circumstances, be liable in a suit for conversion thereof until after due demand by the real owner and refusal. (*Gillet* v. *Roberts*, 57 N. Y. 28; *Brown* v. *Cook*, 9 Johns. 361; *Storm* v. *Livingston*, 6 Johns. 44; *Nelson* v. *Whetmore*, 1 Rich. [S. C.] 318; *Beckley* v. *Howard*, 2 Brev. [S. C.] 94; *Clark* v. *Rideout*, 39 N. H. 238; *Carroll* v. *Mix*, 51 Barb. 212; *Dowd* v. *Wadsworth*, 2 Dev. [N. C.] 130; *Sargent* v. *Gile*, 8 N. H. 325; *Blankenship* v. *Berry*, 28 Tex. 448; *Watt* v. *Potter*, 2 Mason, 77; *Ingalls* v. *Bulkley*, 15 Ill. 224; *Robinson* v. *Burleigh*, 5 N. H. 225; *O'Connell* v. *Jacobs*, 115 Mass. 21; *Leighton* v. *Shapley*, 8 N. H. 359; *Isack* v. *Clark*, 2 Bulst. 312; *Green* v. *Dunn*, 3 Camp, 215; *Hawkes* v. *Dunn*, 1 Cr. J. 519; *Yale* v. *Saunders*, 16 Vt. 243; *Hall* v. *Daggett*, 6 Cow. 653; *Caufield* v. *Monger*, 12 Johns. 347; *Hall* v. *Robinson*, 2 N. Y. 293; *Wilton* v. *Girdlestone*, 5 B. & Ald. 847; *Morris* v. *Bills*, Wright [Ohio], 343; *Wilson* v. *Cook*, 3 E. D. Smith, 252; *Hardy* v. *Keeler*, 56 Ill. 152; *Witherspoon* v. *Blewett*, 47 Miss. 570; *Waring* v. *P. R. R. Co.*, 76 Penn. St. 491; *Kennet* v. *Robinson*, 2 J. J. Marsh. 97; *Solomons* v. *Dawes*, 1 Esp. 83.) The defendant is not liable in this action to the plaintiff because it never collected anything on the check. (*S. N. Bank* v. *S. Bank*, 128 N. Y. 26; *M. Bank* v. *A. Bank*, 7 N. Y. 459; *Ayrault* v. *P. Bank*, 47 N. Y. 570; *E. Bank* v. *T. N. Bank*, 112 U. S. 276; *Rosenberg* v. *Block*, 118 N. Y. 329; *Cothran* v. *H. N. Bank*,

8 J. & S. 401; *Thayer* v. *Manley,* 73 N. Y. 308; *Graham* v. *Corder,* 38 Mo. 337.)

GRAY, J.   I think that the determination by the General Term was correct.   It proceeded upon the theory that the facts established by the evidence were insufficient to justify an inference that the defendant was placed in the wrong, because of its failure to show that there had been any demand on the part of Cameron.   The defendant had come lawfully into possession of the draft in question and a demand by Cameron, if he was entitled to the draft, or to its proceeds, and a refusal after such demand by the defendant, were essential in order to make out a case of conversion.   In Addison on Torts, page 312, the rule is stated as follows:  " When the chattels of the plaintiff have not been wrongfully taken possession of by the defendant, but have come into his hands in a lawful manner, he cannot be made responsible for a conversion of them until they have been demanded of him by the owner, or the person entitled to the possession of them, and he has refused to deliver them up."   In *Goodwin* v. *Wertheimer* (99 N. Y. 149), where the defendant had come into possession of the goods in question, as assignee under a general assignment for the benefit of creditors, and had refused to deliver them up upon the request of the attorney for the vendors of the goods, claiming that they had been obtained by the defendant's assignors by fraud, this court held there was no sufficient proof of a demand and that, " the original possession of Wertheimer being lawful, and not tortious, it was necessary to change the character of his possession by a demand and refusal, before the plaintiffs could maintain an action against him for conversion, or to recover the goods."

It is evident from the proof that the defendant had not assumed dominion over the property in hostility to the right of any one entitled to be regarded as the true owner, and the demands which had been made upon it by Mrs. Melson and the Farmers' Bank were not of a nature to put it in the wrong.   Mrs. Melson was not entitled to the draft and the

defendant, having received it in payment of her check, was not bound to regard her as authorized to make any demand for it on the part of Cameron, or to treat her otherwise than as a stranger. The Farmers' Bank made no demand for the draft and, if we could assume that it was in a position to make such a demand and had done so in fact, its legal relation was that of an agent for the defendant in the transaction and not for Cameron. The position of the defendant was, in legal contemplation, that of a lawful holder of the draft, which had been sent to it by the Farmers' Bank in payment of the check which had been forwarded for collection. The transaction of the check had been closed. The check had been paid and was cancelled. Thenceforward the duty of the defendant, with respect to the draft received in payment, was owing to its correspondent, the Harrisons' bank in Indianapolis; although, under the circumstances, Cameron might have been entitled to show his right to, and to intercept, any moneys received upon its collection. When the defendant received the check from the Harrisons for collection, it was not informed of any fact in connection with its ownership and, in undertaking its collection, assumed merely the relation of agent for the forwarders.

It is not disputed that, as between Cameron and the Harrisons, the check was received by the latter merely for collection and, had nothing occurred to prevent the receipt by the defendant of the moneys due upon the draft received in payment of the check, Cameron would, doubtless, have been entitled, in a proper action, to assert and to maintain his right to have them paid over to him. The difficulty in this case is that the plaintiff has utterly failed to make out a case of any conversion of property. He has not shown that any property belonging to him had been wrongfully withheld from him. It should be observed that Mrs. Melson's demand, as was that of the Farmers' Bank, was to hold the moneys. If we might assume authority in her, her demand was to do something violative of defendant's obligations to its principal. I suppose that Cameron did not misconceive his legal rights in the

matter; but the moneys due upon the draft not having been actually received by the defendant, because of their misappropriation by the sheriff, Cameron probably believed that he could be made whole in the matter, through a recovery of damages upon the theory of a wrongful conversion by the defendant.

In the action brought by this defendant against the Farmers' National Bank upon the draft remitted by the latter in payment of the check, and which it had directed its correspondent, the First National Bank in New York, as the drawee, not to pay, this court in its Second Division, (118 N. Y. 445), held distinctly that the defendant, the Farmers' Bank, was in no position to defend the non-payment of the draft upon the ground of Cameron's rights in the proceeds of the check. It was held in that case that neither the Farmers' Bank, nor the Corn Exchange Bank were agents for Cameron and that the Farmers' Bank in the transaction was the agent for the Corn Exchange Bank. While the decision of that case may not be deemed to be conclusive upon Cameron, nevertheless, it laid down a rule of law for application in the present case, which would be binding upon us; even if it were not, as we consider it to be, correct. The defendant, as a collecting bank, was the agent of the Harrisons as to the check received from them. The Farmers' Bank, in undertaking the duty of collecting the check, at the request of this defendant, was its agent. From those relations certain duties flowed and, in either case, a responsibility for the performance of the resulting duty rested upon the agent.

Had the Farmers' Bank, in the performance of its duty towards its principal, this defendant, suffered its draft to be paid in New York, the present condition of things might not have arisen and it would have been, possibly, within the power of Cameron, by appropriate action, to have intercepted the moneys on their way to the hands of the Harrisons. Mrs. Melson not only did not apprise the defendant of her possessing any authority from Cameron to demand the draft, or its proceeds, but her attitude in the transaction was not such

as to carry with her demand any weight.   She was the drawer
of the Cameron check, and the obligation resting upon her to
see to its payment was discharged by the forwarding of the
draft in question for payment.   Thereafter, as to the defend-
ant, with respect to the draft, she was either a stranger or, for
aught that appeared, as one asserting a claim in hostility to
the draft.

The argument of the appellant rests, in the main, upon the
theory that Cameron never parted with the ownership of the
check to the Harrisons and that the defendant acquired no
title to it as against Cameron, nor to the draft received in pay-
ment of the check.   While it is true that, as between Cameron
and the Harrisons, Cameron remained the owner of the check
and was entitled to its proceeds, to all intents and purposes,
still the defendant only knew the Harrisons in the transaction
and when it collected the check and received the draft for it,
it held it, in legal contemplation, for the Harrisons only and
was the lawful holder of the draft for the purpose for which
the collection of the check was undertaken, viz. : for the credit
of Harrisons' account with it.

For these reasons, which are in agreement with the views
of the General Term, I think the judgment appealed from
should be affirmed, with costs.

All concur.

Judgment affirmed. _____