(156 App. Div. 485.)

SAMUEL et al. v. HOLBROOK, CABOT & ROLLINS CORPORATION.

(Supreme Court, Appellate Division, First Department. May 2, 1913.)

1. CONFUSION OF GOODS (§ 5*)—ACTS CONSTITUTING CONVERSION.

Where a purchaser of iron in a foreign country instructed a customhouse broker to have the same entered at the customhouse, pay the duty, and deliver the iron at a place named, and the broker paid the duty and employed a lighterage company to transport the iron to a designated place, but the captain in the employ of the company delivered it to a third person, who without inquiry as to the owner of the iron mixed it with iron of his own, and refused to deliver the iron to the purchaser on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the mistake being discovered, the third person was guilty of converting the iron.

[Ed. Note.—For other cases, see Confusion of Goods, Cent. Dig. § 4; Dec. Dig. § 5.*]

2. CONFUSION OF GOODS (§ 5*)—ACTS CONSTITUTING CONVERSION.

A defendant, who received by mistake plaintiff's property and who mixed it with his own property, so that its identity was lost, and who refused to return it when demanded by plaintiff, was guilty of conversion, and could not justify a failure to return on the ground that he had made such use of it as rendered identity impossible.

[Ed. Note.—For other cases, see Confusion of Goods, Cent. Dig. § 4; Dec. Dig. § 5.*]

3. TRIAL (§ 148*)—ISSUES—SUBMISSION TO JURY—WAIVER.

Where the parties submitted the questions to the court, without, any request to submit any question to the jury, the parties consented to a submission to the court of any question of fact involved.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 331; Dec. Dig. § 148.*]

Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by Frank Samuel and another, doing business under the firm name and style of Frank Samuel, against the Holbrook, Cabot & Rollins Corporation. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Thomas E. O'Brien, of New York City, for appellant.
Frederic C. McLaughlin, of New York City, for respondents.

INGRAHAM, P. J. This action was to recover for the conversion of 100 tons of low phosphorous pig iron by the defendant. The iron had been sold by the plaintiffs to the United States government, and was to be delivered to the government at the Navy Yard in Brooklyn. The plaintiffs were a firm doing business in Philadelphia, Pa., and had purchased this iron in England to fulfill a contract which they had made with the United States government. When the iron arrived in this country, the plaintiffs employed a customhouse broker in New York to have the iron duly entered at the customhouse, pay the duties thereon, and have the iron delivered at the Brooklyn Navy Yard. The customhouse broker, in pursuance of these instructions, caused the duty to be paid and employed a lighterage company to transport the iron from the steamer on which it arrived and deliver it to the general storekeeper of the Brooklyn Navy Yard. The lighterage company sent one of its lighters in command of a captain in its employ to receive the iron and deliver it at the Navy Yard. The lighter arrived at the Navy Yard, went to the government dock where such iron was delivered, and was told by somebody to go to another dock, which was in control of the defendant, who was engaged in constructing a dry dock at the Navy Yard. Following such instructions, the captain of the lighter moved his lighter to the defendant's dock, whereupon the defendant's

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes .

superintendent, without any inquiry as to whom the iron belonged·to, or whether it was the property of the defendant, caused the iron to be unloaded from the lighter, and mixed it with the iron belonging to the defendant, and which was being used by it in the performance of its work. Subsequently, on the mistake being discovered, the plaintiffs demanded of the defendant the return of the iron. The defendant refused to deliver the iron to the plaintiffs, because as they said they could not identify it or separate it from the defendant's iron on the dock, but offered to allow the plaintiffs to identify the iron, or to allow the plaintiffs to take any iron they could find on the defendant's dock. The fact is, however, that the defendant did not deliver the plaintiffs' iron to them, and plaintiffs never succeeded in obtaining the return of the iron. Plaintiffs then brought this action for its conversion.

[1] The only serious question is whether there was evidence to justify a verdict for the plaintiffs. At the close of the testimony the plaintiffs moved for the direction of a verdict in their favor, and defendant moved to dismiss the complaint. There was no request to submit any question to the jury, but the parties submitted the question to the court to be determined, who thereupon directed a verdict for the plaintiffs. I do not think the captain of this lighter can be said to be the agent of the plaintiffs. He was the agent of the lighterage company, which had been employed by the customhouse broker to deliver this iron to the storekeeper in the employ of the United States government at the Brooklyn Navy Yard, and in carrying out this contract he allowed the defendant to take the iron without, so far as appears, any instructions from the storekeeper of the Navy Yard or any other government official. He was certainly not acting under the direct authority of the plaintiffs, and the only authority he had from his employer, the lighterage company, was to deliver the iron to the storekeeper, and not to the defendant.

The evidence seems to be uncontradicted that the unloading of the lighter was by direction of the defendant's employés; that all the captain had to do with the delivery to the defendant was, following the directions of some unknown person, he moved his lighter to the defendant's dock. When the lighter arrived there, the defendant took possession of the iron and mixed it with its own, so as to render identification impossible. Certainly the captain of the lighter had no connection with, nor was he responsible for, the defendant taking possession of this iron and·appropriating it. The taking possession of the iron and the use to which it was put was the sole act of the defendant, for which it is responsible. I am willing to assume, however, that under the facts here stated the mere taking possession of the iron would not be a conversion, and to convert this possession of the plaintiffs' property into a wrongful or tortious act required a refusal or neglect of the defendant to deliver the iron to the plaintiffs upon demand.

[2] When, however, the plaintiffs demanded the return of the iron, it was plainly the duty of the defendant to return it. The defendant had received by mistake plaintiffs' property. It had mixed it with its

own property, so that its identity was lost. The defendant had no right to the possession of the property, or to retain it, when the true owner demanded it, and certainly the defendant cannot justify a failure to return it upon the ground that it had appropriated the plaintiffs' property to its own use, and in so doing had made such a use of it as rendered its identification impossible; and certainly the plaintiffs could not be divested of their ownership of the property because the defendant had used it so as to prevent its being identified, and defendant cannot excuse a failure to return because of the method in which it had used or appropriated the plaintiffs' property. There was at least a question of fact as to whether or not there was an actual conversion by the defendant.

[3] Upon this testimony the direction of a verdict for the defendant at the end of the case would have been clearly error, and the defendant, by not requesting the submission of any question to the jury, consented to the submission of any question of fact involved in the case to the court.

I think, therefore, the verdict as directed by the court was sustained by the evidence, there was no error committed on the trial which would justify a reversal of the judgment, and that the judgment and order appealed from should be affirmed.

McLAUGHLIN, LAUGHLIN, and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). If, when appellant took the iron, the lighter's contract to deliver had been completed, a different question would be presented from that raised by the record, because it might be claimed that the captain's authority to deliver had been exhausted, and that he would thereafter have been a mere agent or bailee to hold the iron for the owner, and as such would have had no right to allow possession to be taken by a stranger. But no claim is made, or could be made on this record, that the iron had been delivered to the government, or that the obligation of the lighter or of the plaintiffs in that behalf had been performed. As it appears to me, at the time appellant came into possession of the iron, the captain of the lighter was the agent of his employers to deliver the iron to the true owner. By mutual mistake, due as much to the captain's carelessness as to the appellant's, delivery was made to them. Possession under such circumstances would not subject appellant to an action for conversion without demand. Gillet v. Roberts, 57 N. Y. 28; Pease v. Smith, 61 N. Y. 477; Castle v. Corn Exchange Bank, 75 Hun, 89, 26 N. Y. Supp. 1035, affirmed 148 N. Y. 122, 42 N. E. 518.

When the respondents made their demand, appellant expressed its willingness to accede to it, provided respondents would identify the iron. The respondents' letter of May 6, 1910, shows that they refused to attempt to identify the iron, because it had been indistinguishably mixed with other iron of appellant, for which reason respondents admitted that compliance with their demand by the appellant was impossible. No claim is made that such mixing was not a perfectly innocent act on appellant's part, the result, in natural sequence, of the original mistaken delivery. Under such circumstances, appellant's

failure to comply with the demand was not evidence of conversion. Gillet v. Roberts, supra; Hill v. Covell, 1 N. Y. 522; Whitney v. Slauson, 30 Barb. 276; Hills v. Snell, 104 Mass. 173, 6 Am. Rep. 216. See, also, Silsbury v. McCoon, 3 N. Y. 379, 53 Am. Dec. 307.

The judgment should be reversed, and the complaint dismissed.