JOHN J. KREHER, Respondent, v. ISAAC M. MASON *et al.*, Appellants.

### St. Louis Court of Appeals, January 2, 1889.

1. **Sheriff:** CONVERSION : ACCOUNTS. Where it appeared that an attachment debtor had transferred to the present plaintiff, before the issuing of the attachment writ, a lot of open accounts, chiefly against non-residents of this state, and the sheriff seized the attachment debtor's books containing the same accounts and sent notices to the debtors therein of his levy, with a demand of payment to him as receiver, these acts of the sheriff constituted no conversion of the accounts for which he could be held liable in an action, whatever might be the plaintiff's title to the same. There was no effectual interference with the plaintiff's dominion over the property, nor any appearance of hindrance touching his collection of the amounts due, caused by the sheriff's performance of his duty under the writ.

2. **Attachment:** SEIZURE OF BOOKS. The levying of an attachment on the debtor's books of accounts is not in itself an attachment of the accounts. The effect of the levy and notice is to bring the persons from whom the accounts are due within the jurisdiction of the court, by means of garnishment or otherwise, and to prevent, by such a consummation of the involuntary transfer to the receiver, the making of payments to the attachment debtor.

*Appeal from the St. Louis City Circuit Court.* — HON. DANIEL DILLON, Judge.

REVERSED.

*Joseph S. Laurie* and *Dyer, Lee & Ellis*, for the appellants.

If a ministerial officer simply obeys the mandate of a writ, fair on its face, and issued by a court of competent jurisdiction, he cannot, in so doing, be held as a

tort-feasor. The seizure of the books was not *per se* an attachment of the accounts therein entered, but was, as this court has said (*Elliot v. Bowman*, 17 Mo. App. 693), an incipient or "inchoate levy," a preliminary step necessary to be taken in order to enable the court to acquire subsequent jurisdiction over the debtors thus disclosed, by garnishment or receiver's notice, and the sole effect of such preliminary seizure was to exclude the rights of the attachment defendant to the debts of which said books contained evidences. The debtors were not bound and could not be affected thereby until brought by subsequent proceedings within the jurisdiction of the court. *Finnel v. Burt*, 2 Handy, 218. "Book accounts cannot be levied upon by the officer merely taking the books in which they are entered into his custody. For the purpose of a levy they stand just as debts of which there is no written evidence and must be levied in the same way." *Swart v. Thomas*, 26 Minn. 141; *Brown v. Smith*, 17 Wis. 410; *Clark v. Warren*, 7 Lansing, 180; *Bank v. Yandes*, 8 N. Y. 415. The end contemplated by our statute in empowering the officer to seize the account-books was that such seizure should operate as an involuntary transfer or assignment of the defendant's right and title to the debts therein evidenced, and then, like the assignment of every claim or demand not evidenced by the signature of the obligor, it became necessary, in order to consummate said assignment and render the same valid, to notify the debtor. *Richards v. Grigg*, 16 Mo. 418; *Choate v. Noble*, 31 Mo. 341. "A receiver of a court of justice has been well said to be the arm of the court by which he is appointed — a part of the court itself. He is the agent of no one except the court by which he is authorized to act." *Bank v. Sampson*, 22 Kan. 431. "His appointment is made for the benefit of all. His possession, though impartial while the controversy is undecided is regarded as in behalf of the one who is ultimately

found to be entitled to the property." 3 Pomeroy's Equity, sec. 1336; Beach on Receivers, sec. 222; *Alexander v. Relfe*, 9 Mo. App. 133. "He cannot be held responsible for acts done by virtue of an order of the court." Beach on Receivers, sec. 304; *Hospes v. Almstedt*, 13 Mo. App. 272. If it be contended that Mason was not actually a receiver, and, therefore, not entitled to the same protection, we reply that by the terms of the statute he had no choice in the premises. In the absence of an appointment the law imposed upon him as an additional responsibility "the power and duties of receiver," and as such required him to act. It would be inconsistent to urge that the law did not contemplate that in the exercise of said power and duties he should enjoy a corresponding protection. Beach on Receivers, secs. 289 and 627; *Hershfield v. Claflin*, 25 Kans. 166; *Stewart v. Lay*, 45 Iowa, 604; *Wall v. Pulliam*, 5 Heiskell, 365. "If an officer attempts to make an attachment, but it is invalid by reason of his failure to comply with the requirements of the statute, he is not chargeable with a conversion." Wait's Actions and Defences, 167, and cases cited. "The attachment arrests the debt in the hands of the garnishee if it were then owing to the attached debtor and not otherwise." *Funkhouser v. Lay*, 24 Mo. 44; *Dickey v. Fox*, 24 Mo. 217; *Green v. Timmons*, — Mo. App. —; *McGarry v. Coal Co.*, — Mo. —. "The return of an attachment of personal property does not conclusively prove a taking so as to subject the officer to an action of trespass." *Boynton v. Willard*, 10 Pick. 166; *Lesher v. Gitman*, 30 Minn. 321. In order to establish conversion it must appear that plaintiff was deprived of his property by some act of the defendant's. Pollock on Torts, 288; Addison on Torts, 454; *Burroughs v. Bayne*, 5 H. & N. 296. "A mere assertion of right on defendant's part is not enough." *England v. Cowley*, L. R. 8 Ex. 126; *Irish v. Cloyes*, 8 Vermont, 30. "There must be an

unlawful interference with the property or exercise of dominion over it by which the owner is damnified." *Phillips v. Hall*, 8 Wendell, 610 ; *Spooner v. Manchester*, 133 Mass. 270 ; *Miller v. Baker*, 1 Met. 27 ; *Ramsley v. Buzley*, 11 Oregon, 49 ; *Sparks v. Purdy*, 11 Mo. 219 ; *Smith v. Grove*, 12 Mo. 51 ; *Koch v. Branch*, 44 Mo. 542 ; *McCoy v. Hyatt*, 80 Mo. 130 ; *Walsh v. Sichler*, 20 Mo. 374 ; *Roach v. Type Foundry*, 21 Mo. App. 118. " In an action of trover evidence that the defendant claimed the property, but which fails to show any adverse possession, or any acts indicating a conversion of the property, will not support a judgment for the plaintiff." *Beine v. Beine*, 24 Mo. App. 675. " To make out conversion there must be proof of a wrongful possession, or the exercise of dominion over it, in exclusion of owner's rights." *Fernald v. Chase*, 37 Me. 289 ; *Rand v. Sergeant*, 23 Me. 326 ; *Gillet v. Roberts*, 57 N. Y. 28 ; *Crawford v. Newell*, 23 Iowa, 453 ; *Irish v. Cloyes*, 8 Vt. 30 ; *Amadon v. Meyers*, 6 Vt. 308 ; *Caraway v. Burbank*, 1 Dev. 306 ; *Andrews v. Shattuck*, 32 Barb. 396. " In no case can a man be guilty of conversion who has not, by himself or by his agent, had possession of the goods in dispute." *Hollins v. Fowler*, 7 Q. B. 627 ; *Boobier v. Boobier*, 39 Maine, 470 ; *Andrews v. Shattuck*, 32 Barb. 396 ; *McCann v. Wolf*, — Mo. App. —.

*David Goldsmith*, for the respondent.

Will an action of trover lie for a book account? Says a recent article on convertible property (Central Law Journal, vol. 13, p. 262) : " The roll now embraces, therefore, every species of personal property, be it animate or inanimate, tangible or intangible. Indeed, conversion is so far co-extensive with trespass that it equally applies to whatever of a movable nature is capable of ownership as property." These views are

Kreher v. Mason.

again repeated with numerous citations of authorities in support of it in another portion of this article, viz: 13 Cent. Law Jour., 284, 285, and in the treatise on Trover, in 6 Wait on Actions and Defenses, 155. *Woodbourne v. Scarborough*, 20 Ohio St. 57. The view that accounts can be converted and be sued for in trover is further maintained by 3 Suth. on Dam. 521; *Sadler v. Bean*, 37 Iowa, 439; *O'Donoghue v. Corby*, 22 Mo. 393; Cook on Stock and Stockholders, sec. 576; *Budd v. Railroad*, 12 Or. 273; *Payne v. Elliot*, 54 Cal. 142; *Ayers v. French*, 41 Conn. 142; *Kuhn v. McAlister*, 1 Utah, 273. "Any wrongful taking or assumption of a right to control or dispose of property constitutes a conversion. Any wrongful act which negatives or is inconsistent with the plaintiff's right is *per se* a conversion." *Allen v. McMonigle*, 77 Mo. 481; *Dusky v. Rudder*, 80 Mo. 407; *Neiswanger v. Squire*, 73 Mo. 198; *Williams v. Hall*, 60 Mo.; 6 Wait on Act. and Def. 178. The defendants contend that the levy was not, in itself, a conversion, because it was not complete, and that there was no conversion of the accounts due from non-resident debtors. The question is practically settled by the decision of this court in *Elliot v. Bowman*, 17 Mo. App. 693. We submit that there is no sound reason upon which the action for an account against a non-resident can be distinguished from the action for an account against a resident. The argument of the appellants appears to be that the conversion of a debt can only occur in the proximity of its *situs*, which they maintain is the domicile of the debtor. But assuming the *situs* of a debt to be the *situs* of a debtor, the contention based thereon by appellants lacks force, because the conversion of a chose in action need not occur at its *situs*, but may take place anywhere. Moreover, the notice issued by the sheriff was delivered to each debtor at his domicile, and would sufficiently establish a conversion there. "Although the defendant may obtain the

possession of property under legal process, yet, if he assert a title or claim, hostile to the plaintiff's right or title, under such legal process, it is a conversion as against the plaintiff." *Liptrot's Adm'r v. Holmes,* 1 Ga. 39 ; *Cotton v. Marsh,* 3 Wis. 228 ; *McConeghy v. McCau,* 31 Ala. 447.

PEERS, J., delivered the opinion of the court.

An action of trover originating in the circuit court of the city of St. Louis, where on a trial before the court sitting as a jury judgment was rendered for plaintiff in the sum of $2,095.58. Motions in arrest of judgment and for new trial were filed, and being overruled the case comes here by appeal.

The importance of the principle involved in the case has induced us to set out the pleadings in full. The petition was filed March 21, 1885, and is as follows :

"Plaintiff states that the defendant Isaac M. Mason, is and at the times hereinafter mentioned and referred to was, the sheriff of and for the city of St. Louis ; and that the defendant, the Continental Bank, is and at the said times was a corporation duly incorporated under the laws of this state ; and that at all times hereinafter mentioned and referred to there was pending in said circuit court for said city of St. Louis an action wherein said Continental Bank was plaintiff and the Jacob Ambs Distilling Company was defendant ; that such proceedings were heretofore had in said last-mentioned cause, that heretofore, to-wit, on the twenty-third day of August, 1884, a writ of attachment was duly sued out and was fully issued under the seal of said court and the hand of its clerk therein, which said writ was directed and was then and there on said last-named day delivered to said Mason as such sheriff as aforesaid and commanded said sheriff among other things to attach the lands, tenements, goods, chattels, rights, moneys, credits, evidences of debt and effects of

said Jacob Ambs Distilling Company or so much thereof as would be sufficient to satisfy the claim of said Continental Bank, as sworn to in said cause, with interest and costs ; that thereafter, to-wit, on ―― day of August, 1884, said Isaac M. Mason, as such sheriff as aforesaid, by direction of said Continental Bank, levied said writs upon and under the same undertook to attach credits and claims which the plaintiff herein then had and owned against various and sundry persons ; that the paper hereto attached and marked Exhibit A is a correct statement of the names of the debtors respectively of such claims and of the amount owing on each claim ; that said credits and claims were demands upon open accounts which the various debtors owing the same had contracted with said Jacob Ambs Distilling Company for merchandise sold and delivered to them, respectively, by said Jacob Ambs Distilling Company, and had been, prior to the attachment thereof as aforesaid, and to the issue of said writ of attachment, assigned and transferred for value by said Jacob Ambs Distilling Company to the plaintiff herein, the said John Joseph Kreher, and that the defendants herein were well aware thereof at the time of said levy and made the said levy to vex, harass and oppress this plaintiff ; that the defendants herein converted to their own use the said credits and demands of the plaintiff herein, and that the plaintiff herein was thereby damaged in the sum of twenty-two hundred dollars.

"Wherefore the plaintiff prays for judgment against the defendant herein in the sum of twenty-two hundred dollars."

"EXHIBIT A."

"*Names of Debtors.*                         *Amounts owing by them respectively.*

L. Woelfle.............................$ 78.50.
A. M. Swanson....................... 24.90.
F. Stoeckli........................... 75.45.

Peterson & Conniff.................  ........ 687.24.
John A. Fischer.........  ............... 169.75.
A. D. Stever............................ 365.95.
Vogel & Buechler...................... 162.50.
G. W. Scott........................... 140.04.
E. Morllson.....  ............  ......... 99.25.
Florian Spolti.....  .................... 82.50.''

To which the defendant filed the following answer:

"Now at this day come the defendants herein and answering plaintiff's petition deny each and every allegation therein contained. Further answering herein these defendants say that on or about the twenty-first day of August, A. D., 1884, the Jacob Ambs Distilling Company, a corporation organized under the laws of the state of Missouri, and engaged in the business of buying, selling, and dealing in all kinds of liquors, and being the same distilling company referred to in plaintiff's petition, and being then and there wholly insolvent and unable to pay its debts, for the purpose of hindering, delaying and defrauding its creditors, by and with the sanction of its officers and board of directors, transferred to Jacob Ambs, one of the directors and also the president of said corporation, a large stock of merchandise then in the store of said distilling company, and to the Mechanics' Bank of the city of St. Louis, a small portion of its assets, and to the plaintiff herein and others, being, however, but a small minority of all its creditors, and leaving wholly unpaid large sums of money then due and owing by said distilling company to divers and sundry persons, including this defendant, the Continental Bank of St. Louis, and amongst said transfers was the transfer and assignment of the accounts to the plaintiff in this suit and referred to in plaintiff's petition.

"That said pretended transfer included the claims and credits which the petition herein alleges and charges the defendant Mason levied upon under said writ of attachment, and this defendant says that said pretended

transfer by said Jacob Ambs Distilling Company to the plaintiff of said accounts, credits and claims, on account of indebtedness alleged to have been owing upon open account to said Jacob Ambs, were fraudulent on the part of said distilling company for the reason that the object and purpose of said Jacob Ambs Distilling Company in so transferring said accounts was to hinder, delay and defraud their creditors, of which fact the plaintiff had notice at the time the said pretended transfers of said accounts, credits and claims were made to him ; that the said transfer of said stock of merchandise and open accounts to said Jacob Ambs and to others on said twenty-first day of August, 1884, embraced all of the assets of said corporation and were designed by said distilling company, as plaintiff well knew, to place all of said assets of said corporation beyond the reach of its creditors and particularly this defendant, the Continental Bank, which then and there had claims against said distilling company amounting to more than the sum of twenty thousand dollars, and these defendants say that it was the duty of the officers and directors of said distilling company under the law, on said twenty-first day of August, 1884, and when said corporation was insolvent, to have ratably distributed the assets of said distilling company amongst all of its creditors.

"That it was the intention of the officers and directors of said corporation in so conveying and transferring all of the assets of said distilling company to discontinue the business of said corporation and thereby wind up its business affairs, and that by reason of said transfer of said assets said corporation then and there became and was dissolved."

A reply to the answer denying each and every allegation of new matter set up constituted all the pleadings.

The facts, as disclosed by the evidence, are for the

most part uncontroverted, there being no material con-flict in the testimony. The leading question in the case is, do the facts shown establish a conversion? The whole case turns upon this issue.

We shall not attempt to set out the evidence in full in this opinion ; for a proper understanding of the case it is enough to say that the evidence shows that John J. Kreher, the plaintiff, a half brother of Jacob Ambs, president of the Jacob Ambs Distilling Company, was an accommodation endorser on a note of the distilling company for four thousand dollars, held by the Conti-nental Bank, which note was dated August 14, 1884, and due in fifteen days after date. Said Kreher was also endorser on another note for said company for two hundred and fifty dollars, dated June 5, 1884, payable ninety days after date. Plaintiff also held the note of the distilling company payable to himself for $425.15, dated August 1, 1884, payable sixty days after date, and a due-bill for $191.11, dated May 3, 1883.

On August 21, 1884, plaintiff, being aware of the financial embarrassment of the company and the contem-plated disposition of its assets to certain parties, agreed to assume payment of said accommodation notes and release the distilling company from all liability to him in consideration of an assignment to him of certain accounts.

In pursuance of this agreement, Aug. Ambs, secre-tary, on the morning of August 23, delivered to plaintiff a schedule of accounts showing the name and address of each debtor and the balance due.

Said schedule comprised forty-seven names and aggregated in amount $5,078.93. Attached thereto was a general assignment and transfer by the distilling com-pany to plaintiff of all of said claims. No entry was made upon the books of said distilling company indi-cating the assignment of any accounts, but the accounts thus assigned were each closed and balanced on the

ledger by a fictitious credit of cash as of August 21, 1884, said cash entry corresponding in amount with the balance due. Said books, consisting of petty cash-books, journal, cash-book, and ledger, with index, were removed from the store of the distilling company by a member of the Ambs family, either on the morning of the twenty-third of August or on the day previous.

In the afternoon of August 23 an attachment, based upon a claim for twenty-one hundred dollars, was issued in favor of the Continental Bank against the Ambs Distilling Company and the writ delivered to sheriff Mason, who at once proceeded to the store of the distilling company and executed the writ by seizing all the property which was visible. The vault being closed, the sheriff assumed that it contained the books of account and other papers subject to seizure, and thereupon made the following return upon the writ: "Executed this writ in the city of St. Louis this twenty-third day of August, 1884, by levying upon, seizing, and taking into my custody as property of defendant, at 113 North Second street, the following described personal property, to-wit: A stock of liquors, wines and cigars, all the books and book-accounts, office fixtures, safe and furniture, and miscellaneous articles."

The vault, as the sheriff discovered upon gaining access thereto subsequently, contained a large number of documents, papers, and account-books of previous years, but the books containing the accounts which are the subject of this action had been removed from the building, as before stated, prior to said levy, and were not therefore included or affected by said levy and return.

Afterwards, on August 30, Mr. Goldsmith informed the sheriff that certain account-books of the Ambs Distilling Company (the ledger, journal and cash-books containing these accounts) had been placed in his

possession and he surrendered the same to the sheriff, who thereupon gave him the following receipt: "St. Louis, August 30, 1884. I have this thirtieth day of August taken from the possession of .............. as property of the Ambs Distilling Company, one journal, 1881, No. 2, one cash-book, 1884, and one ledger marked 1883."

The sheriff had no knowledge or information that any of the accounts had been assigned, or that any one claimed an interest therein until September 24, 1884, when Mr. Goldsmith called at his office and stated that the firm represented a number of parties to whom accounts had been assigned and wanted to know whether, under the levy, he claimed all the accounts in the books, including the assigned as well as unassigned accounts, whereupon the sheriff replied that he claimed all the accounts, and at Mr. Goldsmith's request gave him the following writing : "In answer to your inquiry in regard to my attaching the books of accounts of the Ambs Distilling Company, I have attached all of them, the assigned and unassigned accounts." Mr. Goldsmith did not, at this interview, or at any other time, inform the sheriff what particular accounts he referred to, nor how many, nor what parties he represented. Neither did he make any claim or demand on behalf of any one, nor question the right of the sheriff to hold all the accounts. The sheriff retained custody of the books without further action until he assumed charge in the capacity of receiver under the provisions of the statute. The index was missing, and Ambs having failed upon notice to produce it, the receiver prepared another, and thus discovered that there stood on the ledger three hundred and ninety-three accounts, of which one hundred and forty-two had been balanced by credits of cash as of August 21, 1884. The fact that one hundred and forty-two of the ledger accounts appeared balanced by cash entries, without "folio numbers," on

the same day and at such a recent date, together with a clue obtained by correspondence with one of the debtors, led the receiver to conclude that said entries and credits were fictitious and assigned merely to mislead. Consequently, defendant Mason, as receiver, on October 20, 1884, addressed by mail to every one of the debtors, appearing on the ledger, including those whose accounts had been thus closed, a notice in the following form :

"Mr......................\

"On the twenty-third day of August,. 1884, by virtue of a writ of attachment issued by the clerk of the circuit court of the city of St. Louis, and to me directed, being No. 352, returnable to the October term, 1884, in favor of the Continental Bank, and against the Jacob Ambs Distilling Company, and in pursuance of section 431, Revised Statutes of Missouri, by virtue of which I, as sheriff, act as receiver, I hereby notify you that the books of the said Jacob Ambs Distilling Company show that you are indebted to it in the sum of $.....: which amount please remit."

Only one debtor responded in any manner to the receiver's notice and that was Peters & Conniff. Said firm (whose account is embraced in this action) appeared on the ledger as owing $687.24, and on November 18, 1884, they remitted by letter to Mason, as receiver, $253.93, claiming that the account stated was incorrect, and that the latter sum was all they owed, and all they would pay. Mason took no other steps, either as sheriff or receiver, concerning the books, accounts or debtors ; neither did the Continental Bank. And the above-mentioned sum represents the entire amount realized by seizure of books.

Appellants admit that the receiver's notices sent out as aforesaid included the debtors whose accounts are made the subject of this action, and it further appears that all of said debtors except two, Scott and

Morrison, were at the date of the attachment non-residents of the state of Missouri.

Plaintiff testified that as soon as the assigned accounts were delivered to him, August 23, he, in conjunction with Aug. Ambs, secretary of the corporation, addressed notices to the various debtors, informing them of the transfer of the accounts to the plaintiff and soliciting payment in his behalf. Further, that he at once placed said accounts in the hands of Louis Ambs, Otto Ambs and one Canmann, all traveling men, who traversed the territory of the debtors and made collections for him; that he continued to make collections even after the receiver had sent out his notices, and in fact collected "about one hundred and fifty dollars upon the accounts assigned since this suit was brought, on March 21, 1885."

It may be remarked here that the court in rendering judgment deducted from the sum claimed in the petition $140.85 as the amount which the evidence showed that plaintiff had collected on three of the accounts included in this action.

Plaintiff further states that in course of collection he closed a number of accounts by taking acceptances of the debtors, some of which matured and were paid subsequent to date of receiver's notices; that after the issue of said receiver's notices he closed the account of Christ. Dellen (whose account is included in this action) by taking from him an acceptance of the amount of his account, $96.45; that in settlement of John A. Fisher's account (which account is included in this action), he holds a draft for the amount, $169.74, dated July 10, 1884, payable to plaintiff's order and accepted by Fisher September 26. Plaintiff stated that he had collected in cash $2,518 of the accounts thus assigned to him. Plaintiff testified that Peterson & Conniff had written him a response to his demand complaining of the quality of the goods furnished them and refusing to pay

their account for that reason. He also stated that a few days after the institution of the attachment suit he told Mr. Baker, president of the Continental Bank, that he had an assignment of some of the accounts of the Ambs Distilling Company and that he would be glad to place them in the hands of the bank for collection with the understanding that the proceeds should be applied toward the payment of the four thousand dollar note held by the bank on which he was endorser, but that Mr. Baker replied to the effect that he was advised the attachment of the books would hold all the accounts therein and therefore he would prefer not to do it. It also appeared that about noon of August 23, Mr. Goldsmith, as attorney for the Ambs Distilling Company, informed Col. Dyer, attorney for the Continental Bank, in general terms, that the distilling company had assigned and transferred its assets to Jacob Ambs and other parties, and Col. Dyer replied that he would not hold such an assignment valid, but would attach.

The correctness of the accounts embraced in this action was not established by evidence other than the testimony of the shipping clerk to the effect that he forwarded the goods. Whether they were received or were satisfactory, does not appear. Neither was there any evidence tending to show the value of the goods, the price agreed to be paid, the credits to which accounts were entitled, or the balance due. There was no evidence that said accounts, eleven in number, were collectible. In fact the contrary is clearly implied by the acknowledged and unexplained failure of plaintiff to collect these as he did the other thirty-seven.

Plaintiff does not show or claim in his evidence that he was in anywise obstructed or impeded as to collections by word or deed of defendants, or that any of the debtors refused or delayed payment to him by reason of the aforesaid attachment.

The court having tried the case sitting as a jury the

instructions are of no special importance here save to indicate the theory upon which the case was tried, and being voluminous we will not repeat them.   Suffice it to say that the court declared the law to be that the seizure of the books by the sheriff under the attachment, and sending out notices as receiver to the debtors therein enumerated, operated as a conversion *per se* of the accounts owned by plaintiff, and that the measure of damages was the *prima-facie* value of the accounts. We are unable to agree with this idea of the law.   A ministerial officer who simply obeys the mandate of a writ issued by a court of competent jurisdiction cannot be held as a *tort-feasor*.   The books attached by the sheriff were the property of the defendant and were subject to seizure under and by virtue of section 416 of the Revised Statutes of this state, and the fact that the distilling company had, prior to the seizure of the books, delivered to plaintiff a portion of the *accounts* entered upon the books, conferred upon plaintiff no rights or interest in the books themselves, and in no respect qualified the officer's right to seize the same.   On the other hand, if the books and all accounts therein contained had been transferred and delivered to plaintiff prior to the attachment he could then have complained of the conduct of the sheriff in seizing them.   *Woodborne v. Scarborough*, 20 Ohio St. 57.

To hold that a sheriff becomes a trespasser in seizing under an appropriate writ account-books, confessedly the property of the defendant, for the reason that the accounts therein entered had been previously assigned to a third party, would be unreasonable.   The record before us does not disclose that the sheriff had any notice of the assignment of the accounts ; there was no entry on the books indicating that fact, but if there had been, it would have been immaterial as affecting the legality of the seizure of the books, even if the assignment had been endorsed upon every ledger account

claimed by plaintiffs.    What, then, was the legal effect of this seizure of the books of account and what were the duties and obligations of the sheriff in the premises? Said seizure of the books was not *per se* an attachment of. the accounts therein entered, but was, as this court has said ( *Elliott v. Bowman*, 17 Mo. App. 693 ), an incipient or "inchoate levy," a preliminary step necessary to be taken in order to enable the court to acquire subsequent jurisdiction over the debtors thus disclosed, by garnishment or receiver's notice, and the sole effect of such preliminary seizure was to exclude the rights of the attachment defendant to the debts of which said books contained evidence.    The debtors were not bound and could not be affected thereby until brought by subsequent proceedings within the jurisdiction of the court. *Finnell v. Burt*, 2 Handy, 218.    The only purpose of the statute in directing the officer to take the books of account into his custody is to secure proof as to the defendant's attachable credits.

The statutes of Minnesota, Wisconsin, and New York, authorize the seizure of books of account and provide that credits shall be attached by leaving with the debtors a copy of the writ with notice of the attachment, and the sheriff is empowered by statute to institute suit in his own name for the purpose of collecting the debts thus attached.    But it has uniformly been held in those states that a seizure of books of accounts fixes no lien on the accounts therein, and the sheriff can maintain no suit for their collection until he shall have first attached the same by notice to the debtors in the manner and form provided.    The accounts are not susceptible to levy or attachment. *Swart v. Thomas*, 26 Minn. 141 ; *Browner v. Smith*, 17 Wis. 410 ; *Clark v. Warren*, 7 Lans. 180 ; *Nassau Bank v. Yandes*, 8 N. Y. St. R. 415.    The statutes of this state are unlike the foregoing in this :   The sheriff, as such, is not authorized to collect debts or credits which may have been

attached, and there is no way of reaching the same except by garnishment proceedings. With us the end is reached by seizing, under execution or attachment, books of accounts, notes, bills and other evidences of debt, and placing the same in the hands of a receiver, who in his own name may sue and collect, holding the funds subject to the order of the court. This statute was taken from Ohio and first appeared in the Revision of 1855 in this state, and we must look to the adjudicated cases of the former state to determine the construction thereof. In *Finnell v. Burt*, 2 Handy's Rep. 220, the superior court of Cincinnati, in treating of this statute, says : "The right of a creditor in proceeding under an order of attachment to seize evidences of indebtedness and have them settled and collected through a receiver is clearly cumulative upon the right to proceed by garnishment against the debtors. He need not wait for the action of a receiver, but may at once, under section 200 of the Code, proceed against any debtor as a garnishee. If he does not take that course the action of the receiver, or the sheriff as receiver, in giving notice to the debtors, has the same and no greater effect in fixing a liability. In either case the debtor stands liable from the time the notice is served." If no receiver is appointed, if none can be found willing to act, it is made the duty of the sheriff to do so under this section of the Code.

Our statute, in empowering the sheriff to seize the account-books, evidently contemplated that such seizure should operate as an involuntary transfer of the rights of the defendant to the debts evidenced thereby, and, like the assignment of any claim or demand not evidenced by the signature of the obligor, it became necesary, in order to consummate the assignment and render the same valid, to notify the debtor. *Richardson v. Grigg*, 16 Mo. 418. The receiver must give this notice, and until the debtor is notified he is in nowise affected

by a seizure of the books. *Choate v. Noble*, 31 Mo. 341. Hence we conclude that the rights of plaintiff as prior assignee were not prejudiced by the seizure, and as the same was lawfully made the sheriff incurred no liability.

In order to establish conversion it must appear that the plaintiff was deprived of his property by an unauthorized act of the defendant. Addison on Torts, 525. This same rule is followed in a line of decisions both in England and in America. *Hiort v. Bott*, L. R. 9 Ex. 86; *Hollis v. Fowler*, House of Lords, July 6, 1875; *Pease v. Smith*, 61 N. Y. 477. In the latter case the court uses the following language: "Conversion is defined to be an *unauthorized* act which deprives another of his property permanently or for an indefinite time." "To maintain *trover* or *trespass de bonis asportatis*, evidence of an actual forcible dispossession of the plaintiff is *not* necessary; any unlawful interference with the property or exercise of dominion over it, by which the owner is damnified, is sufficient." *Phillips v. Hall*, 8 Wend. 610.

The supreme court of Massachusetts, in a well-written opinion by Field, J., in discussing this subject, says: "Conversion is based upon the idea of an assumption by the defendant of a right of property or a right of dominion over the thing converted, which casts upon him all the risks of an owner, and it is therefore not every wrongful intermeddling with or wrongul asportation or wrongful detention of personal property, that amounts to a conversion. * * * Acts which do not in themselves imply an assertion of title * * * will not sustain an action of trover." *Spooner v. Manchester*, 133 Mass. 270. So in *Same v. Holmes*, 102 Mass. 503, Mr. Justice Gray says that the action of trover "cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the

rightful owner of it, or destroy the property," and the authorities are there cited. In our own state the authorities are to the same effect, *i. e.*, "that the plaintiffs are deprived of their property through the wrongful act of defendants." *Koch v. Branch*, 44 Mo. 542 ; *Sparks v. Purdy*, 11 Mo. 219 ; *McCoy v. Hyatt*, 80 Mo. 130 ; *Walsh v. Sichler*, 20 Mo. App. 374 ; *Roach v. Type Foundry*, 21 Mo. App. 118 ; *Beine v. Beine*, 24 Mo. App. 675.

Now, if we are correct as to these propositions, and applying them to the evidence before us, we can but conclude that the plaintiff was not in any wise deprived of his property by the acts of defendants in the premises. The seizure of the books in no respect concerned him, and the notice sent out by the sheriff as receiver put no legal obstacle between him and the debtors. He had the accounts in his possession and was in a position to enforce collection. It is not shown that any attempt was made to collect them, or that any debtor refused to pay. It is conceded that defendants herein did not collect these debts, then the question arises, did they by the exercise of dominion over them prevent respondent from collecting the same? The word "dominion," as used in the authorities, necessarily means the power to *control*, the *power of governing* that over which authority is exercised, and any unauthorized exercise of such power must naturally be inconsistent with, and subversive of, the owner's rights, but without such power an attempt to exercise dominion is simply futile and fraught with no consequences.

Conversion by the exercise of dominion, and thereby interfering with the rights of the owner, occurs when a party, under pretense of right, or *colore officii*, without taking manual possession but still in proximity to the chattel, and with power to reduce the same to possession, declares that he does, or will, take possession and the owner yields to the circumstances, and is thereby virtually dispossessed. In such cases it is held

that the acts of a party are equivalent to an appropriation, and a corresponding liability results.   Instances where an unwarrantable interference with the property of another fixed a liability as for conversion, are well treated in *Baldwin v. Cole*, 6 Mod. 212; *McCombie v. Davies*, 6 East, 538; *Bristol v. Burt*, 7 Johns. 254; *Reynolds v. Shuler*, 5 Cow. 323; *Gibbs v. Chase*, 10 Mass. 128; *Connah v. Hale*, 23 Wend. 462.   But where the property in question is in possession, actual or constructive, of the owner, and beyond the power and control of adverse claimants, there can be no conversion by mere claim of interest or right therein.   6 Wait's Actions and Defenses, p. 201, sec. 16, and cases cited.   And it is equally true that acts which fall short of an actual interruption of the owner's dominion have never been held tantamount to a conversion.   "The mere declaration of a person that he is the owner of property, without any proof that he has taken possession, or exercised any dominion over it, cannot amount to conversion. * * * So the declaration of an officer that he has attached property, without proof that he has taken possession, or exercised any control or dominion over it, will not amount to conversion. * * * To make out conversion there must be proof of a wrongful possession, or the exercise of dominion over it, in exclusion of owner's rights." *Fernald v. Chase*, 37 Me. 289.

"It is true that to constitute conversion, a manual taking is not necessary; but where words are relied on, they must be uttered under such circumstances, in proximity to the property, as to show a defiance of the owner's right, a determination to exercise dominion and control over the property, and to exclude the owner from exercising his right." *Gillett v. Roberts*, 57 N. Y. 28.

"The officer should do that which would amount to change of possession, or something that would be equivalent to claim of dominion, coupled with a power to exercise it." *Crawford v. Newell*, 23 Iowa 453.

A mere assertion of the right of dominion is never permitted to go to juries in cases of trover as evidence of conversion, unless the assertion is made in view of the property and in the presence of the owner, and in order to deter him from exercising his just control over it. *Irish v. Cloyes*, 8 Vt. 30; *Amadon v. Myers*, 6 Vt. 308; *Carraway v. Burbank*, 1 Dev. 306; *Andrews v. Shattuck*, 32 Barb. 396.

An attaching officer can be held liable as for conversion only when he takes the property into such possession, actual or constructive, as would entitle him to maintain an action against another party taking the same way. 6 Wait's Actions and Defenses, p. 200, sec. 15, and cases cited.

In a case arising in Minnesota, the sheriff under attachment seized certain books of accounts, and assumed to attach the accounts therein by making a return that he did so levy. The debtors were not brought within the jurisdiction of the court,—that is to say, the sheriff did not at the time leave with them severally a certified copy of the writ and notice, as required by the statute. Said accounts, to the amount of twenty-one hundred dollars, had been previously assigned to a third party by the attachment defendant. The sheriff only collected thirty-eight dollars. In an action by the assignee of said accounts against the sheriff for conversion, it was held that, "a levy upon the account-books did not constitute a levy upon the accounts or debts charged in them; nor, though the levy is unlawful, does it constitute a conversion of the accounts." The acts complained of did not constitute an interference with plaintiff's title, possession or control of the book-accounts, nor did they amount even to the assertion of any right respecting them on the part of the sheriff. It is not enough that he may have deemed his acts to have been, not only an assertion and exercise of dominion over the property, but an actual seizure of it under the writ. It was not conversion. *Lesher v. Gethman*, 30 Minn. 321.

An application of the rule thus announced in the foregoing cases will exonerate defendants from any liability in this action.    The credits herein were not attached.    The *ex-parte declarations* of the sheriff, assuming that the attachment included all of the accounts, is without legal effect.    Consequently, the sole act in the premises which respondent can characterize as an exercise of dominion over his property is the receiver's notice to the debtors, and this was not in defiance of, or inconsistent with, the owner's title.    The notice was not of itself an attempted interference with his rights, but was simply a request to remit such amounts as the debtor owed the distilling company.    Had the sheriff, in his capacity as receiver, brought suit on these accounts and the debtors had answered, setting up the assignment, and the receiver had attacked the validity thereof, then the owner could, with some reason, assert that the receiver was contesting his rights.    Besides, the record shows that all the debtors whose accounts are embraced in this action, except two, were non-residents of the state of Missouri.    The debtors were not within the jurisdiction of the court, and the receiver's notice could have no possible legal effect as to them.    This fact brings appellants clearly within the rule that no one can be held as for conversion by reason of any attempt to exercise dominion over property beyond his power and control.

It appears that the sheriff collected from Peters & Conniff, of the amount shown by the books to be due from them to the Jacob Ambs Distilling Company, the sum of $253.93.    On a reconsideration of the question we have come to the conclusion that he cannot be held liable to the plaintiff for this item as for a conversion. If we are right in our conclusion, that a simple contract debt,—not being a thing of substance,—not evidenced by any note, bond or other writing to which the law

ascribes a separate value,—cannot be the subject of a conversion, because incapable of possession,—the principle must equally hold good, whether the debt has been collected or not. But if we had any doubt upon the question upon principle, our doubts would be concluded by the decisions of the supreme court in *Funkhouser v. How*, 24 Mo. 44, and *Dickey v. Fox*, 24 Mo. 217, where it was held that if, in a suit by attachment against the payee of a note who has previously assigned the same, the maker thereof is garnished, and judgment is rendered against him as garnishee, and payment enforced, the assignee of the note will not be entitled to recover from the plaintiff in the attachment the sum so paid, but that his only remedy is against the maker, his own debtor. We followed this ruling in *Green v. Timmons*, 28 Mo. App. 459, where there were two men of the same surname and the same initials, and the garnishee in an attachment, not knowing that the defendant in the attachment was a person other than his creditor, answered that he owed a certain sum of money to such person, and upon his answer judgment was rendered against him, on which the money was paid over, so that the plaintiff in the attachment, by this miscarriage of judicial process, collected from the garnishee a sum of money belonging, not to his debtor, but to another man of the same name ; and, in deference to the authority of these cases, we were obliged to hold that the man to whom the garnishee really owed the debt could not follow the fund into the hands of the plaintiff in the attachment and recover it from him in an action. But if the theory of the plaintiff in the case now before us is correct, there was a conversion in each of those cases, and the party who got the money by the abuse or miscarriage of legal process obtained it wrongfully and was liable as for a conversion. Two other cases, binding upon us as authority, hold that in such a case the assignee of the note can recover upon it against the

maker, notwithstanding the fact that the latter had previously been compelled in a proceeding by garnishment to pay the amount of it to a creditor of the original payee. *Gates v. Kerby*, 13 Mo. 157; *Holland v. Smit*, 11 Mo. App. 6. We can see no difference in principle between those cases and the case at bar. Upon the principle of those cases, the assignee of these accounts cannot recover from the sheriff, in an action at law, the sums which he has collected in respect of them, but his remedy against his own debtor remains unimpaired. No distinction can be suggested between the process of garnishment and the statutory proceeding by which a sheriff in his character of receiver proceeds to collect the accounts of the defendant in an attachment proceeding which can make the principle of these cases inapplicable to this case.

It does not necessarily follow from this that the plaintiff is without other remedy than his action against his own debtor. Section 430, Revised Statutes, provides that "the receiver shall, when required, report his proceedings to the court, and shall hold all moneys collected and all property received by him subject to the order of the court." It may well be that, under this section, the court would have, on equitable principles, the power, on the petition of the plaintiff, and a showing of the facts, to order the sheriff to turn over to him the fund thus collected from his debtor; but it is clear that the sheriff cannot be charged in respect of it as a tort-feasor.

The judgment of the trial court will, with the concurrence of Judge THOMPSON, be reversed. Judge ROMBAUER, having been of counsel, does not sit.