NATHAN FLEISCH *et al.*, Plaintiffs and Appellants, v. NATIONAL BANK OF COMMERCE OF ST. LOUIS, Garnishee, etc. ; A. BENEDICT *et al.*, Appellants ; GEORGE R. LOCKWOOD, Receiver, Respondent.

### St. Louis Court of Appeals, May 5, 1891.

Attachment: LEVY ON BOOKS. The statutory levy on books of account of a defendant impounds whatever debts and rights of action, present or prospective, are exhibited by the accounts contained in the books, and vests in the receiver in charge of the books under the levy whatever rights of action, legal or equitable, such defendant would have had, if he had continued in the possession of the books ; the receiver in such case stands in the shoes of the debtor, as regards the rights of action, just as a receiver in equity does. *Held*, accordingly, that, where the books levied upon showed the transfer of notes and accounts as collateral security, the levy upon them, when perfected by notice from the receiver to the transferee, constituted a levy upon those notes and accounts subject to the lien of the transferee.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*A. Arnstein* and *Sale & Sale*, for appellants.

*P. Wm. Provenchere*, for respondent.

THOMPSON, J.—The controversy in this case arises between the plaintiffs and interpleaders, S. Brainard Pratt *et al.*, and Benjamin Benedict *et al.*, all of whom are judgment creditors of the firm of A. Loth & Sons, on the one part, and George R. Lockwood, receiver of the said firm, interpleader on the other part. The facts which appear from the record are briefly as follows:

The firm of A. Loth & Sons had, prior to November 16, 1889, transacted its banking business with the Bank of Commerce, of St. Louis. On that day, the members of the firm, finding the firm insolvent, and having

prior to that time procured the bank to discount their customers' notes to the amount of over $18,000, upon which notes they were contingently liable as indorsers, and desiring to protect the bank against possible loss by reason of these discounts, assigned in writing and delivered to the bank, as collateral security, certain book accounts to the aggregate amount of $2,868.76, and notes of various parties to the amount of $458.30, making a total of $3,327.06. Each separate book account, upon being so assigned, was closed on the ledger of A. Loth & Sons, by an entry showing that it had been transferred to the Bank of Commerce, and the following entry was made by the firm in their journal:

"November 16, 1889. The following accounts have been transferred to the Bank of Commerce, St. Louis, Missouri, as collateral security for our indebtedness to them:

| | | |
|---|---|---|
| Securities on account to sundries.... | | $2,868 76 |
| H. Strauss, Denver, Colorado....... | $881 41 | |
| S. B. Randall & Co., Sefalia, Colorado, | 198 72 | |
| Daniels, Fisher & Smith, Leadville, Colorado............... | 446 53 | |
| A. Seedler, Erie, Colorado.......... | 173 53 | |
| Levy, Sternberger & B., Boulder, Colorado...... | 168 25 | |
| Hilderbrand & Bauman, Alton, Illinois............ | 720 49 | |
| P. Freedman, Denver, Colorado..... | 279 77 | |
| Bills receivable on account....... | | 458 30 |
| Max Keller ...................... | 358 30 | |
| S. Hoffman..................... | 100 00 " | |

And the record of the assignment appeared on A. Loth & Sons' ledger, as follows ( p. 38 ):

"SECURITY ACCOUNT

"Bank of Commerce, November 16, 1889.

| | |
|---|---|
| To sundries........................ | $2,858 76 |
| Bills receivable................... | 458 30 |

Fleisch v. The St. Louis Nat. Bank of Commerce.

On November 20, 1889, the sheriff of the city of St. Louis, under a writ of attachment sued out by one of the creditors of the insolvent firm of A. Loth & Sons, seized and levied upon the books of the firm. On November 27, 1889, the interpleader, George R. Lockwood, was appointed receiver by the circuit court of the city of St. Louis, under the provisions of section 550 of the Revised Statutes of 1889, in the attachment proceedings, and, on December 5, 1889, the sheriff delivered to the receiver so appointed, all books and evidences of debt, levied upon by him, which included the journal, the ledger, the cash book and also the bank book of the firm.

On November 20, 1889, A. Loth & Sons had on deposit to their credit in the Bank of Commerce the sum of $386.83. On the same day, or a day or two thereafter, and after the attachment had been levied on the books of A. Loth & Sons, the president of the bank informed one of the members of that firm, that the bank did not feel itself sufficiently secured, and that it would appropriate this cash balance and hold it as additional security for the indebtedness of the firm to the bank, to which the member of the firm assented. At this time no notice of any levy had been served on the bank. There was no entry on the ledger or journal of the firm of A. Loth & Sons of the cash balance due to it from the bank, but the cash book of the firm disclosed the circumstance that the cash of the firm was in some bank or other. The receiver did not notify the bank of his appointment, as required by the statute (R. S. 1889, sec. 552), until December 13, 1889, which was long after the transfer of this cash balance. On May 27, 1890, when the last of the discounted paper of A. Loth & Sons, held by the bank, had been paid, the bank applied said cash balance, and the proceeds of the collateral account which had thus been transferred to it by A. Loth & Sons, to the liquidation of the amount then due to it from the firm. It had collected all the

collateral accounts and notes, realizing therefrom the amount of $3,232.91. Adding to this the cash balance already spoken of, a total is made of $3,619.74. Of this sum the bank applied $1,513.20 to reimburse itself for discounted notes, which, to that amount, had not been paid,—leaving a cash balance in its hands of $2,106.54, and also such of the discounted notes as had not been paid, amounting to the face value of $1,513.20.

On May 31, 1890, after the bank had so applied the collateral and had ascertained the balance in its hands, the plaintiff and the interpleaders, S. Brainard Pratt *et al.*, and Benjamin Benedict *et al.*, caused the bank to be summoned as garnishee. Thereafter the bank, as garnishee, filed its answer, asking leave to pay and deliver the money and notes aforesaid into court, and praying that the garnishing creditors and the receiver, George R. Lockwood, interplead for the same, which the court ordered to be done, and which was done. At the trial of the interpleas, the garnishing creditors asked the court to give certain declarations of law, which the court refused. Thereupon the court rendered a judgment in favor of George R. Lockwood, receiver, and directed the clerk of the court to pay over to said Lockwood the money in controversy, and to deliver to him the unpaid discounted notes which the bank had deposited in court. From this judgment the plaintiffs, S. Brainard Pratt *et al.* and Benjamin Benedict *et al.*, prosecute the present appeal.

We do not think it necessary to refer to the instructions refused, because we are of opinion that the judgment which the court rendered was the only judgment which could properly have been rendered upon the above state of facts, which facts are not disputed. It appears from the foregoing statements that the sheriff levied upon the books of accounts of A. Loth & Sons, that the receiver was appointed, and that the receiver notified the bank of his appointment, as required by the statute, prior to the time when the interpleaders

summoned the bank as garnishee. It follows that no question can arise, whether as against the garnishee the levy on the books of account was consummated, such as arose in the case of *Elliott v. Bowman*, 17 Mo. App. 693, and *Kreher v. Mason*, 33 Mo. App. 297. The levy, assuming that it was a good levy under the statute, had been consummated by the receiver by doing all that the law required him to do, prior to bringing an action to enforce whatever may have been due from the bank to A. Loth & Sons. If, therefore, the account of the firm with the bank was subject to levy under the statute, the rights of the receiver are paramount to those of the garnishing creditors, and there is an end of the case.

We are of opinion that the levy was sufficient under the statute to reach the account which the firm of A. Loth & Sons had with the Bank of Commerce, and to attach in the hands of the Bank of Commerce whatever balance should be found due to the firm of A. Loth & Sons, upon the final settlement of that account. The transaction by which the account had been transferred by A. Loth & Sons as collateral security to the Bank of Commerce was, as above seèn, distinctly spread out upon the journal of the firm, which journal was one of the books of account of the firm levied upon by the sheriff. The other accounts of the firm with the Bank of Commerce as a depositor in that bank were presumptively shown by the pass book, in which the bank kept its accounts with the firm ; and a balancing of that pass book at any time in the usual way in which banks do business with their customers would have exhibited the state of the account between the bank and the firm, and the balance due to either. Whatever indefiniteness might exist in these accounts was aided by the cash book and the ledger ; and we do understand that it is contended that the state of the accounts between the firm and the bank could not at any time have been ascertained by the books of the firm, supplemented by

knowledge of what the bank had done in collecting the collaterals. Our view of the statute, which authorizes a levy upon books of account, is that it is to be reasonably construed, and that it is not to be narrowed down or frittered away by excluding from it such accounts as might have been rendered more definite in their terms by the aid of an expert accountant, especially if drawn out with the view to being so levied upon.

A forcible argument has been made by counsel for appellant to the effect (if we summarize it correctly), that this statutory proceeding, by levying upon the debtor's books of account, appointing a receiver, and the receiver notifying the debtor, is merely a statutory mode of garnishment; that, as in the case of an ordinary garnishment, the process reaches only debts which were actually due at the time of the levy of the garnishment, or, at most, at the time of the answer of the garnishee, and does not reach mere equities or contingencies. We are unable to take this view. Our view is that the remedy created by the statute is something more than a mere garnishment. The remedy by garnishment continues, and is not displaced by this peculiar statutory levy. In the present case the first attaching creditor, in addition to levying upon the books and proceeding as he has done, might also have proceeded by garnishment against the Bank of Commerce. If this statutory remedy were merely another kind of garnishment, with no greater scope than the ordinary garnishment, then the enacting of it by the legislature would have been a work of supererogation, at least so far as domestic creditors are concerned. Our view is that the statutory levy upon the books of account of the debtor impounds whatever debts and rights of action, present or prospective, are exhibited by the accounts contained in those books, and that, when the receiver perfects the levy by notifying the other party to those accounts, the levy and notice are effective to impound and subject whatever may be due upon the final adjustment of those

accounts.   Our view is that the effect of the statute is
to vest in the receiver whatever rights of action, legal or
equitable, the attachment debtor would have had, had
he continued in possession of them.   He stands in the
shoes of the debtor, in so far as regards his right of
action, exactly as a receiver in equity does.   We are
strengthened in this view by that clause of the statute
( R. S., sec. 552 ) which, after providing for notice by the
receiver to the debtors named in the accounts, recites
that, "from the date of such service and knowledge
thereof, every such debtor shall stand liable, and shall
account to the receiver for the amount of moneys *and
credits* of the defendant in his hands, or due from him
to defendant."   What are the collaterals deposited by a
customer with his banker but "credits" within the
meaning of this statute?   It would be a very narrow
and restricted construction of the statute, and one
which neither comports with its letter nor spirit, to
hold that it does not extend to the common case of a
customer indebted to his banker and insolvent, who
deposits with his banker accounts and notes of his cus-
tomers to secure his indebtedness to the banker, of a
face value larger than such indebtedness, so that, when
the banker collects such accounts and notes and liqui-
dates the indebtedness, he in turn becomes the debtor
to the customer for the residue in his hands.

We see no difficulty in this case requiring more
extended observation, and our judgment is that the
judgment of the circuit court be affirmed.   All the
judges concur.